## THE STATE *vs.* HENRY R. SOPER & *als.*

In an indictment against several, they are not of right entitled to be tried sep-
arately, but are to be tried in that manner only, when the court from suffi-
cient cause shall so order it.

In the trial of an indictment for larceny, a witness from whom the property is
charged to have been stolen, is not bound to disclose the names of persons
in his employment, who gave the information which induced him to take
measures for the detection of the persons indicted.

Where several persons are proved to have been associated together for the
same illegal purpose, any act or declaration of one of the parties in refer-
ence to the common object and forming a part of the *res gesta*, may be given
in evidence against the others.

A demurrer to evidence is considered an antiquated, unusual and inconvenient
practice, and is allowed or denied by the Court, where the indictment or
cause is tried, in the exercise of a sound discretion, under all the circum-
stances of the case.

EXCEPTIONS from the Court of Common Pleas, PERHAM J. pre-
siding.

This was an indictment against *Soper*, *Staples*, *Locke* and
*Twitchell*, for larceny at *Orono*, in stealing thirty pine logs, the
property of *J. Cushing* and others. After they had been ar-
raigned, and had pleaded not guilty, *Soper* moved for a separate
trial. The Judge refused to grant the motion, unless it should be
necessary to his defence. It was not shown to be necessary to
the satisfaction of the Judge, and he refused to grant the separate
trial; to which *Soper* excepted. A witness testified to certain
conversations with *Staples*, tending to show him to be guilty of the
offence, and on cross examination stated, that in a subsequent con-
versation, *Staples* said he was willing to do what was right, and
proposed to pay fifty dollars rather than have a difficulty, but
would not settle unless a receipt were given to *Soper* and himself.
The counsel for the accused objected, that this evidence should be
excluded, because the statements were made under an offer to
compromise. The objection was overruled. The witness testified,
to similar statements of *Locke ;* that the witness told *Locke*, that
he should make no promises, and gave no assurances, but said " it
would be full as well and better for him to state the facts, as the
whole would come out, but the confessions were voluntarily made."

The counsel for the accused objected to the consideration of this evidence by the jury, because it was obtained by inducements held out to him. The County Attorney said he was willing to have all the statements made after the witness had used the words, "full as well," &c. excluded, and the witness replied, that he had not related any conversation after that time. The testimony was not ruled out by the Judge. On the cross examination, the witness was asked by the counsel for the accused, if he had received any information, by letter or otherwise, which induced him to go to *Old-town* on this business, and if so, from whom? The witness replied, that the men in their employment were afraid of being mobbed, if it were known they gave the information, and that if the names of those who gave it were made known, the owners would be unable to get men to assist them, and declined to give the names of the men in their employment, from whom the information was obtained, unless the Court should so order. The defendants' counsel requested the Judge to give such order, which he declined, and the question was not answered. The other facts sufficiently appear in the opinion of the Court. The counsel for the accused, after the evidence was closed, offered a demurrer to the evidence. The County Attorney refused to join the demurrer, and the Judge declined to order it to be done, and did not receive the demurrer. They then requested the Judge to charge the jury, that the evidence did not support the indictment; but the Judge declined so to do. The verdict was guilty, and exceptions were filed by the accused.

*J. Appleton* argued in support of the grounds taken in defence at the trial; and cited *Archb. Cr. Pl. & Ev.* 60; *Roscoe on Cr. Ev.* 29; 6 *Car. & P.* 146.

*Goodenow*, Attorney General, for the State, argued, that the accused had *no right* in law, or by usage, to demur to the evidence in a criminal prosecution. *Young v. Black,* 7 *Cranch,* 565. The Court may always in their discretion, refuse the request to demur, and the case shows sufficient cause for the refusal in this instance. The question, whether there was or was not a joint offence was properly submitted to the jury and settled by them. No argument is necessary to justify the other rulings of the Judge.

The opinion of the Court was prepared by

EMERY J. — The defendants, excepting *Twitchel*, who was not arraigned, pleaded not guilty. *Soper* moved for a separate trial. It did not appear necessary for his defence, and was refused. Even in capital trials, it is not a matter of right, but within the discretion of the Court. *United States* v. *Merchant*, 12 *Wheat.* 480.

Exception was taken to the evidence of *Thomas A. White*, because the statements were made, as it was asserted, in behalf of the defendants, under an offer of compromise. The witness said it was voluntary.

We are not aware that the rule of excluding offers of compromise from being heard in evidence applies to criminal cases. They are not to be compounded. It is not under a searching investigation of acts of larceny, that it is intended a man may buy his peace. 2 *Stark. Ev.* 38.

The Court declined ordering the witness to disclose whether previous to the 16th of *August*, he had received information by letter, or otherwise, and if so, from whom. The witness was unwilling, from motives of policy, to give the names of men in his employ, and from whom he had received information, unless ordered by the Court, though the Court was requested by the prisoners' counsel to order it. The witness said the men in their employ were afraid of being mobbed, if it were known that they gave the information, and if exposed, the owners would be unable to get men to assist them.

In the *United States* v. *Reuben Moses*, 4 *Washington C. C. R.* 726, it was held, that the officer, who apprehended the prisoner, is not bound to disclose the name of the person from whom he received the information which led to the detection and apprehension of the prisoner. It was remarked by the Court, that such a disclosure can be of no importance to the defence, and may be highly prejudicial to the public in the administration of justice, by deterring persons from making similar disclosures of crimes, which they know to have been committed. And we think the situation of the witness, in the employment of the owners of the logs, alleged to have been stolen, would well warrant the Court from holding him to disclose the names of those from whom he received the information, as much as in the case of the officer before spoken of.

After the evidence of the government was out, the defendants, by their counsel, offered to demur to the evidence, which the county attorney refused to join, and the Court declined ordering him to join the demurrer and receiving the same, though offered by the prisoners' counsel. As stated by *Justice Story,* "no joinder ought to have been required or permitted," even in a civil case, "while there was any matter of fact in controversy between the parties. It is no part of the object of a demurrer to evidence to bring before the Court an investigation of the facts in dispute, or to weigh the force of the testimony, or the presumptions arising from the evidence. That is the proper province of the jury. If there is parol evidence in the case which is loose and indeterminate and may be applied, with more or less effect to the jury, or evidence of circumstances, which is meant to operate beyond the proof of the existence of these circumstances, and to conduce to the proof of other facts, the party demurring must admit the facts, of which the evidence is so loose and indeterminate and circumstantial, before the Court can compel the other side to join therein. A case made for demurrer to evidence is to state facts, and not merely testimony, which may conduce to prove them. It is to admit whatever the jury may reasonably infer from the evidence, and not merely the circumstances which form a ground of presumption." *Fowle* v. *Common Council of Alexandria,* 11 *Wheat.* 320.

A striking and masterly discussion of the law relative to demurrers to evidence is found in *Gibson & Johnson* v. *Hunter,* 2 *H. Black. R.* 187, in the opinion delivered by *Chief Justice Eyre,* wherein too, he says, the whole proceeding upon a demurrer to evidence, he takes to be under the control of the Judge before whom the trial is had.

The like construction is adopted by the Supreme Court of the *United States.* A demurrer to evidence is considered an unusual and antiquated practice, which that Court discourages as inconvenient, and calculated to suppress the truth and justice of a case, and is allowed or denied by the Court, where the cause is tried, in the exercise of sound discretion under all the circumstances of the case. *Young* v. *Black,* 7 *Cranch,* 565; *United States* v. *Swett,* 11 *Wheat.* 171, *note to p.* 183, *and cases there cited.*

We apprehend that in criminal cases more especially depending on parol and oftentimes circumstantial evidence, the practice of offering to demur to evidence, and calling on the Court to compel a joinder in the demurrer will not hereafter be adopted. From the best consideration we have given to the evidence *the whole of which is not stated but the substance only*, we cannot perceive that the Judge erred in declining to order a joinder, or to receive the demurrer to the evidence. By our State constitution, in all criminal prosecutions, the accused has secured to him a right to trial by jury. When he pleads not guilty, he puts himself for all purposes upon his trial by jury. He has then made his election. The State's right is to hold him to that election. *Maine Const. Art.* 1, *sec.* 6; *U. S. v. Gibert & al.,* 2 *Sumner,* 19.

It is however insisted on the argument, that the evidence shews no joint offence, and therefore the defendants could not be indicted jointly.

To us it appears, that the jury were justified in the conclusion to which they came, if they believed the testimony. It detailed contrivance and concert of the defendants to effect the common object of secretly getting the logs loose, and forwarding them to the mill for the purpose of converting them to their own use, without the consent of the owners. The saws were adjoining, one of which hauled the logs for both saws. Boats, axes, cant hooks, and pickpoles were kept for getting logs to the mills. There was no separation till they arrived at the mills. It could be but of little consequence in characterizing the offence, how the defendants divided the spoils. They called the boards from such logs, *Kibbe* lumber. A sort of flash language was thus adopted, and the phrase of going up the river to see about a horse, was understood, he was going up after logs; and these White logs were seen coming down the river the *Thursday* night after one of the defendants told that another of them was going up the river. And *Soper, Locke* and others said, if any one gave information, he would be tarred and feathered, sluiced, or have oil poured upon him. Where several persons are associated together for the same illegal purpose, any act or declaration of one of the parties, in reference to the common object, and forming a part of the *res gesta,* may be given in evidence

against the others. *American Fur Company* v. *United States*, 2 *Peters*, 359.

He who commands or procures a crime to be done, if it is done, is guilty of the crime, and the act is his act. *United States* v. *Gooding*, 12 *Wheat.* 469. The proof of the command or procurement may be direct or indirect, positive or circumstantial; but this is matter for the consideration of the jury. Persons can rarely be jointly indicted, except where they have mixed themselves up with the criminal transaction in a manner which in the sober judgment of the grand jury implicates them in the common guilt. *U. States* v. *Gibert & al.*, 2 *Sumner*, 19. And with such proof as is reported here, the indictment seems to be supported.

It is further contended, that the evidence of the confessions of *Locke* were improperly received, because they were obtained by the inducement held out to him by the witness that it would be better for him. A confession forced from the mind by the flattery of hope, or the torture of fear, it is said, comes in so questionable shape, when it is to be considered the evidence of guilt, that no credit ought to be given to it, and therefore it is rejected. 1 *Leach*, 263, *Warubshall's Case*. The witness declared to *Locke*, that he should make no promises, and gave no assurances, but said it would be full as well, and better for him to state it, for the whole would come out. The witness then asked *Locke*, as the matter is first stated in the exceptions, if he had seen any of those logs sawed, and he replied, he had. It is urged, that this is like *Mills' Case*, 6 *Car. & Payne*, 146, where a constable said to a person charged with larceny, it is of no use for you to deny it, for there are the man and boy, who will say they saw you do it, in which case, a confession, made after this, was rejected by *Baron Gurney*. So where the words were, it would have been better if you had told at first. The principle upon which this class of cases is founded, is, that by an inducement being held out to the prisoner, he may be led to suppose that he will be more mercifully dealt with if he confesses, and that he may thereupon be induced to confess himself guilty of an offence he never committed. The witness in the present prosecution, however, declared that he had not stated any thing *Locke* told him after he had said to him it would be better for him to tell the whole. And he wished it to be understood, that

he had not made him any promises, or held out to him any inducement. Nevertheless it is possible, that the course pursued by the witness, might have some influence on *Locke's* mind, though it seems to me under all the circumstances, that it is very improbable.

If a threat or promise be made under such circumstances as to create a reasonable presumption that the threat or promise had no influence, or had ceased to have any influence on the mind of the party, the confession is to be received. Thus in *Richard's Case, 5 Car. & Payne*, 318, a girl charged with poisoning, who was told by her mistress, that if she did not tell all about it that night, the constable should be sent for next morning to take her to S, meaning before the magistrate there, upon which the prisoner made a statement. The next morning a constable was sent for who took the prisoner into custody, and on the way to the magistrate, without any inducement from the constable, she confessed to him. *Bosanquet* Justice, " thought that statement receivable. The inducement was, that if she confessed that night, the constable would not be sent for, and she would not be taken before the magistrate. Now she must have known when she made this statement, that the constable was taking her to the magistrate. The inducement therefore was at an end."

When the promise or threat proceeds from a person who has no power to enforce it, and who possesses no control over the prisoner, a confession made under such circumstances is admissible, if the advice to confess be not given or sanctioned by any person that had any concern in the business. *Row's Case, Russ. & Ry.* 153, cited *Rosc. on Cr. Ev.* 32.

So where a witness stated that he had held out no threat or promise to induce the prisoner to confess, but that a woman, who was present, said she had told the prisoner, that she had better tell all, upon which the prisoner made certain confessions to the witness; *Park & Hullock* ruled, that as no inducement had been held out by the witness to whom the confession was made, and as the only inducement had been held out by a person having no sort of authority, it must be presumed, that the confession to the witness was free and voluntary. Yet the constable interposed no check, and might seem from his silence to approve what the woman said. So where it appeared, that the prisoner was told by a man, that anoth-

er prisoner had told all, and that he had better do the same to save his neck; upon which he confessed to the constable, *Hullock, Baron,* held, that as the promise, if any, was by a person wholly without authority, the subsequent confession to the constable, who had held out no inducement, must be considered as voluntary, and was therefore evidence. *Rosc. Cr. Ev.* 33.

It is said, that whether a person has been told by one person, that it will be well for him to confess, will exclude a confession subsequently made to another person, is very often a nice question, but will always exclude a statement made to the same person. These positions, *Roscoe* says, in page 33, " do not appear to be supported by prior authorities. If after the promises have been made such circumstances should take place as to whom a presumption that a subsequent confession has not been made under the influence of that promise, there appears to be no reason for rejecting the confession, because the person to whom it is made, is the same to whom the former confession was made."

A person being brought up for examination, the magistrate told him that his wife had already confessed the whole, and that there was enough against him to send a bill before the grand jury, upon which the prisoner immediately made a confession. The confession was objected to, as having been made upon a threat. The objection was overruled by *Park* Justice, who understood it as a caution. *Wright's Case, Rosc. Cr. Ev.* 34.

As the witness in his remarks to *Locke* observed, that he should make no promise, and gave no assurances, and held out no inducements, would it be unreasonable to consider all that he said as a caution? It does not appear that the witness had authority, other than being in the employment of the owners, nor that he is the prosecutor. But still more strongly in the subsequent description as to this witness it is stated, that he communicated nothing in evidence after he told *Locke* it would be better for him. Taking the whole together, it must be understood, that no evidence was given of what was said after the advice, even if it could be deemed to have had any influence.

Under all these circumstances, we are constrained to overrule the exceptions, and remit the cause to the Court of Common Pleas for further proceedings.