Argued 20 April; decided 20 June, 1898.

## COOS BAY RAILROAD CO. *v.* SIGLIN.

[53 Pac. 504.]

1. REPLEVIN—EVIDENCE TO DISPROVE OWNERSHIP.—The minutes of the board of directors of a railroad company showing a contract with its manager in his individual capacity for the construction of its road are admissible to impeach the company's title to chattels in an action to recover them from an officer who seized them under execution against the manager, over the objection that the contract was not within sufficient proximity in point of time to the date of the purchase to create the presumption that the contractor was still working thereunder at the time of the purchase, where the minutes of subsequent meetings are introduced showing that up to and subsequent to the commencement of the action both parties treated the contract as subsisting.

2. INSTRUCTIONS—USURPING PROVINCE OF JURY.—It is not improper for a court, in order to attract the attention of the jury to a specific point of law, to tell them that there is evidence tending to show a certain controverted fact: *State* v. *Brown*, 28 Or. 147, followed on this point.

3. LEVY BY SEIZURE—GARNISHMENT.—The mere piling of rails on the wharf of a railroad company by the contractor for the construction of the road, does not constitute such a possession of them by the company as will prevent a valid levy upon them by actual seizure as the property of the contractor, if they in fact belong to him.

4. INSTRUCTION—CONFLICTING EVIDENCE.—Where the evidence as to plaintiff's ownership of the property in litigation is conflicting, it is error to require the jury to find the title to the property in such plaintiff.

5. REPLEVIN—FORM OF JUDGMENT.—An alternative judgment for the sheriff in an action against him to recover property seized under execution, which was taken from him at the commencement of the proceeding, should be for the full value of the property, though it exceeds the amount due on the execution, where a third person is found to be the general owner.

From Coos:   J. C. FULLERTON, Judge.

Replevin—or, as the Oregon Statutes term it—claim and delivery, by the Coos Bay, Roseburg & Eastern Rail-

road and Navigation Company against Z. T. Siglin, in which defendant had judgment, and plaintiff appealed.

Affirmed.

For appellant there was a brief and an oral argument by *Mr. James Watson Hamilton.*

For respondent there was a brief and an oral argument by *Mr. S. H. Hazard.*

Mr. Justice Wolverton delivered the opinion.

This is an action to recover the possession of nine hundred and twenty-four steel T rails, with fishplates to match, and a lot of bridge bolts and washers. The defendant was the sheriff of Coos County, and, as such sheriff, justifies his possession and holding by reason of having seized the same as the property of one R. A. Graham, by virtue of an execution duly issued upon a certain judgment of the circuit court for said county in favor of one Miller, and against the said Graham. It is alleged, in effect, that, at the date of the levy, Graham was the owner of the property in question, but that, being indebted to Miller and others in large amounts, he entered into a conspiracy with the plaintiff to defraud his said creditors, whereby plaintiff was to claim and hold said property for the use and benefit of Graham, and that plaintiff now claims and holds the same, in pursuance of said conspiracy, in secret trust for the said Graham, with intent to enable him to so cover up and dispose of such property as to hinder, delay and defraud his said creditors, but that it has no interest therein whatever. For its source of title, plaintiff claims that it purchased the property through Graham, its manager, from the Peninsular Railway Company of

Lower California; and that J. D. Spreckels Bros. & Co. advanced the funds necessary to the purchase, under an agreement that plaintiff would issue to the said Spreckels Co. certain of its bonds to secure them in the repayment of the amount so advanced. The theory of defendant is that Graham, while it is conceded he was the manager of the plaintiff company, was also under contract with plaintiff to build and construct certain portions of its road, and to that end agreed to furnish all work, labor and material necessary for the purpose, and in consideration thereof was to receive from the plaintiff an assignment and transfer of all its subsidies, together with the mortgage bonds of the company at the rate of $25,000 per mile ; that the rails in question were purchased by Graham upon his own account, for use by him in the construction of said road under his contract, and not for the plaintiff, and that plaintiff never owned nor possessed any interest in them whatever.

1.   To establish its case, plaintiff produced one F. S. Samuels, who testified, in substance, that he was the manager of a large portion of J. D. Spreckels Bros. & Co.'s business ; that said company authorized the purchase of the rails with its own funds for, and directed the shipment thereof to, plaintiff ; and that the funds were advanced on the strength of the railroad company's securities.   This was in the latter part of 1891, or first of 1892.   Other evidence was produced tending to show the shipment of the rails direct to the railroad company, and an acceptance of them by it upon its wharf in Marshfield, Oregon.   When plaintiff had rested, the defendant offered, and the court admitted, over plaintiff's objection, the minutes of a meeting of the board of directors of the railroad company, held August 19, 1890, showing the election of its officers, the adoption of by-laws, the appointment of R. A. Graham as manager,

and the entering into and execution of a contract between
the company and Graham for the construction of its
road, a copy of which being spread upon the minutes,
its terms and conditions were thereby disclosed.   The
objection to the introduction of these minutes was that
they do not tend to impeach the title of plaintiff, because
the making of the contract was not within sufficient
proximity, in point of time, to the date of the purchase,
to create a presumption that Graham was still working
under the contract, in the absence of a showing that
they were purchased by him with a purpose of fulfilling
the contract.   Minutes of subsequent meetings of the
board were introduced, tending to show that up to and
subsequent to the commencement of the action both
parties were treating the contract as subsisting and opera-
tive, and were proceeding in the discharge of its terms
and conditions without change or modification; and
those were also admitted over like objections.   There
was evidence produced by the defendant tending to show
that Graham purchased the rails upon his own account,
and gave his promissory note for the purchase price,
with certain bonds of the railroad company as collateral,
and that they were shipped to Marshfield in his name,
and marked with his initials.   It is perfectly apparent
that the minutes were pertinent to show the business
relations existing between the plaintiff corporation and
Graham, from the time of the inception of the contract
up to and subsequent to the purchase of the rails, and
their treatment of the contract as in force and effective
during the while, as they serve to throw light upon the
contested question whether Graham purchased as man-
ager for the road or upon his own account in further-
ance of the execution of the contractual conditions upon
his part.   Besides, the further testimony tending to
establish the direct purchase of the rails by Graham

individually, for use in the fulfillment of his engagements under the contract, sufficiently answers the very objections taken. Aside from this, the answer laid the foundation for a wide range of investigation, and the testimony was not a whit without its scope, and tended directly to the establishment of defendant's theory of the case, and, therefore, indirectly, to the impeachment of plaintiff's title, all of which was proper matter for the jury. There was no error in the admission of these minutes, and the objections thereto were properly overruled.

2. In this connection we will advert to an exception taken to a portion of the court's charge to the jury, as follows : ''There is some evidence in this case tending to show that said Graham was at said time engaged in the construction of a railroad for plaintiff, under a contract which required him to furnish all the material of every kind and description that entered into the construction of said railroad ; and there is some evidence tending to show that the purchase price of the property described in the complaint was paid by R. A. Graham, and not by the plaintiff.'' The objections assigned to the instruction are, first, that there was no evidence in the record—and we have all the evidence here—tending to show what the court asserts ; and, second, that it was improper for the court to tell the jury that there was evidence tending to show certain facts pertinent to the issues. Upon the first proposition there can be no question but that the court is sustained by the record ; and upon the second it is sustained by the case of *State* v. *Brown*, 28 Or. 147 (41 Pac. 1042). The language was used to attract the attention of the jury to the specific point of law upon which the court desired to instruct. It did not tell them that the fact or facts had been established, but that there was evidence tending to their estab-

lishment, and for that reason the instruction became necessary for their guidance in passing upon the question. If it may be said that the method of attracting the jury's attention to the direct point upon which the court was about to instruct is subject to criticism, it could have done no harm in the present case, as the jury no doubt fully understood from the instruction their duty in the premises.

3. Exceptions were also taken to the following instruction, viz.: "If you should find from the evidence that the rails, at the time the levy was made, were in the possession of the railroad company, then the sheriff would have no right to take possession as the property of Graham, but the mere piling of the rails upon the wharf of the railroad company would not constitute such a possession of them by the railroad company as would prevent the sheriff from making a valid levy upon them as the property of Graham, if you find that the rails were in fact the property of Graham." This instruction was given in view of a question made at the trial whether the sheriff should not have garnisheed the railroad company, instead of taking the property into his custody, and involved the further question whether the property was then and there in the possession of Graham or the company. As has been stated, there was evidence tending to show that the rails were purchased by Graham, and shipped to him, and received by him at the wharf at Marshfield, Oregon, and it was a question for the jury to decide as to which of these parties had the possession, in determining the legality of the levy. In view of the issue, the instruction was pertinent, and this disposes of the instruction touching the same matter asked by plaintiff and refused by the court.

4. Another assignment of error is based upon an instruction requested by plaintiff, as follows: "You are

instructed that the evidence in this case shows the general title of the property in dispute to be in the plaintiff, and you should so find in your verdict.'' The court refused this instruction, and properly so, because there was an issue in the case whether plaintiff or Graham was the general owner ; and the testimony touching such ownership being conflicting, it became a question of fact for the jury to determine. The jury found, by their verdict, that R. A. Graham was, at the time of the levy, the owner of the property, and that defendant acquired a special interest therein by virtue of such levy, and found the value of the entire property to be $10,000.

5.    This brings us to the final question touching the controversy. The plaintiff having taken the property from the defendant at the institution of the action, the judgment was entered for the return of the property to the defendant, and, if a return could not be had, then for its entire value as assessed by the jury. It is insisted that it was error to have so entered the judgment, and that the alternative judgment should have been for the value of defendant's special property or interest therein only, which would be measured by the amount he was directed to make under the execution. The exact contention is stated by counsel as follows : ''Where the defendant has but a limited interest, which is less than the value of the property, judgment in his favor should not be for the full amount, unless he is liable to the general owner, but should be only for the amount of his special interest.'' The rule governing under statutes similar to ours appears to be this : ''If the pleadings and evidence show that the party recovering is the general owner, or is a bailee, and connects himself with the general owner, the jury are to assess the full value of the goods. If they show that he has only a special property in the goods, and the general property is in the other party,

they are to find,   *   *   *   as the value of the property, only the value of the interest of the party recovering,"— quoting from *Booth* v. *Ableman*, 20 Wis. 23 (88 Am. Dec. 730).   See, also, *Bleiler* v. *Moore*, 88 Wis. 438 (60 N. W. 792); *Shahan* v. *Smith*, 38 Kan. 474 (16 Pac. 749); *Witkowski* v. *Hill*, 17 Colo. 372 (30 Pac. 55).   Now, under this rule, if it had been found that plaintiff was the general owner of the property, the alternative judgment of value should have been for the amount of the special interest only.   But the jury has found that Graham, and not the plaintiff, was the general owner; and the defendant, having taken the property from Graham, is answerable to him for its disposal.   Plaintiff occupies the position of a bailee, and if there is any overplus of the property after satisfying the execution, he must return it to Graham, from whom he took it.   If he fails in obtaining a return of the property from the plaintiff, he still would be accountable for its full value to Graham, and it would be unjust and inequitable to permit him to recover only a part of its value.   Such a rule would greatly imperil the sheriff in the discharge of his duties.   The principle is determined by the case of *Dean* v. *Lawham*, 7 Or. 422, which is applicable here, and the judgment of the court below will therefore be affirmed.

AFFIRMED.