Argued December 27, 1916, reversed January 23, 1917.

## STATE *v.* McLENNAN.[*]

(162 Pac. 838.)

**Larceny—Evidence—Admissibility.**

1. In a prosecution for larceny of two horses from the range, testimony of a witness that he had seen an unbranded horse which the prosecutor claimed which answered generally to the description of one of the horses in question, and that later he had seen the same horse in the defendant's field with defendant's brand upon its left shoulder, was competent to show the acts of ownership exercised by the prosecutor over the animal mentioned from which the presumption might arise that it was his property.

---

[*]On evidence of other crimes in prosecution for larceny, see notes in 62 L. R. A. 231, 281, 315, 322, 43 L. R. A. (N. S.) 776.

For authorities discussing the question of possession of recently stolen goods as evidence of larceny, see note in 12 L. R. A. (N. S.) 199.

REPORTER.

**Larceny—Evidence—Admissibility.**

2. The evidence was also admissible to show that the property was afterward found in the possession of the defendant, because it was in his pasture with his brand upon it.

**Criminal Law—Evidence of Settlement—Admissibility.**

3. In prosecution for larceny of two horses from a range, statement of a witness that the defendant in an interview with him had "evidenced a desire" to have the case settled out of court if possible was inadmissible, since it does not impute to the defendant any utterance whatever.

**Criminal Law—Evidence of Settlement—Admissibility.**

4. It was also inadmissible for the reason that there is nothing inculpatory in wishing to get a case "settled."

**Criminal Law—Appeal and Error—Prejudicial Error.**

5. In a prosecution for larceny of two horses from the range, error in the admission of testimony of witness that accused had evidenced a desire to get the case settled out of court if possible was cured by the court's action in withdrawing the testimony from the consideration of the jury.

**Criminal Law—Evidence—Other Offenses—Admissibility.**

6. In a prosecution for larceny of two horses from the range, evidence that the defendant had changed the brand on the animals and that he was concerned in killing them, although tending to prove distinct crimes separate from the one mentioned in the indictment, was admissible as tending to show a general plan or as an attempt to conceal his offense.

[As to brands on animals as evidence of ownership, see note in Ann. Cas. 1913E, 133.]

**Criminal Law—Trial—Instructions.**

7. In a prosecution for larceny of two horses from the range, as the killing of the horse by the defendant might be equally attributed to the commission of malicious mischief, defined in Section 1969, L. O. L., or to a desire to conceal the alteration of a brand, defined by Section 1954, or to the destruction of stolen property to aid in evading the consequences of the larceny, an instruction that, if the jury found from the evidence beyond a reasonable doubt that defendants killed the horses in question for the purpose of concealment, they might consider the same as tending to show the guilt of defendant of the charge of the indictment, was error, since, if the conclusion to be drawn from the circumstances in question is equivocal, it is for the jury alone to say what influence and what direction shall be accorded the evidence on the point.

**Criminal Law—Evidence—Judicial Notice.**

8. It is common knowledge, not requiring expert testimony, that a putrescent or desiccated carcass has been dead longer than one the flesh of which presents no indications of decay.

**Criminal Law—Evidence—Admissibility.**

9. Whether the body is stiff or relaxed, whether the gases of decomposition have distended it or not, the temperature and moisture

prevalent at the time, as well as other factors, are phenomena to be considered in estimating how long a body probably has been dead.

Criminal Law—Experts—Qualification.

10. In a prosecution for larceny of two horses from the range in which it appeared that the horses had been found dead after they were discovered in the possession of the defendant by the prosecutor, in the absence of testimony as to whether the witnesses who had butchered cattle, sheep or hogs had made any systematic or extended observation as to the condition of the carcasses and surrounding circumstances, their opinion as to how long the horses had been dead should not have been admitted.

Criminal Law—Experts—Qualification.

11. In any event they should have described to the jury the appearance and *indicia* upon which they based their judgment, since even an expert cannot give an opinion upon facts not communicated to the jury.

From Wasco: WILLIAM L. BRADSHAW, Judge.

Department 1.   Statement by MR. JUSTICE BURNETT.

Ewen McLennan was indicted with another for the crime of larceny of two geldings alleged to be the property of C. E. Matthews.   The codefendant was acquitted, but, the verdict being adverse to McLennan, he appeals from the consequent judgment.

REVERSED.

For appellant there was a brief and an oral argument by *Mr. Francis V. Galloway.*

For the State there was a brief over the names of *Mr. George M. Brown,* Attorney General, *Mr. Wells A. Bell,* District Attorney, and *Mr. Robert R. Butler,* with an oral argument by *Mr. Brown.*

MR. JUSTICE BURNETT delivered the opinion of the court.

The state gave evidence to the effect that Matthews raised the horses and turned them out on the range in the spring of 1914; that he saw them at intervals between then and August of the following year; that on

November 24, 1915, he saw them in the pasture of the
defendant with the brand of the latter on their
shoulders in the place where his own brand had been
previously placed; that he immediately went to Mc-
Lennan's residence in his absence and left a note with
an employee demanding in effect that the defendant
return the horses to Matthews at once and settle.
This demand was not communicated to McLennan
until two days afterward at Two Springs, when he
forthwith sent word to Matthews that he would have
the horses at his home place and Matthews could come
and look them over. Soon after, and on the same day
the defendant received the information of Matthews'
demand, he and his codefendant left Two Springs
en route for McLennan's home place. They passed
through the pasture where Matthews claimed to have
seen his geldings and gathered up a lot of horses there,
except two belonging to a man named Wilson, and
drove them to McLennan's residence. The following
day, November 27th, McLennan being away from
home again, Matthews came there for the purpose of
inspecting the horses, but, not finding there the two
he claimed, he went on to the pasture where he had
seen them three days before, and in his search found
their carcasses in a canyon decapitated and the brand
skinned off. A witness named Kirsh testified, in sub-
stance, that in May, 1915, at a place about eight miles
from Matthews' and four miles from McLennan's,
he saw a horse which the former claimed and which
answered generally in description to one of the horses
in question, there being no brand upon him, and that
later on in August he saw this same horse in McLen-
nan's field with the latter's brand upon the left
shoulder.

A witness named Bates Shattuck was allowed to testify over the objection of the defendant that after the finding of the indictment McLennan came to interview him. What then occurred is best stated in the language of the witness:

"Why, Mr. McLennan evidenced a desire, of course, mentioned the case, and evidenced a desire to get it settled out of court if possible on account of its coming at his very busy time of the year, and there was nothing definite stated one way or the other. * * This indictment having been brought up against Mr. McLennan, he wished to get it settled and over with if possible, and that is the reason it was mentioned to me. Of course, there was nothing definite said about it, except he wishes a settlement, if possible, out of court."

The defendants' counsel moved to strike out this testimony. The court said:

"I will sustain the motion and strike that out. The jury need not consider that."

After some further parley between counsel and the court the judge then said:

"I will withdraw that from the jury; they need not consider it."

Among other things, the court instructed the jury thus:

"I charge you that, if you find from the evidence in this case beyond a reasonable doubt that the defendants killed the horses in question for the purpose of concealment, you may consider the same as tending to show the guilt of the defendants of the charge in the indictment"

—to which instruction the defendants excepted. Some of the witnesses who had from time to time butchered cattle, sheep and hogs were permitted to give their

82 Or.—40

opinion from an inspection of the carcasses of the horses about how long they had been dead.

1, 2. The defendant imputes error to the trial court in refusing to strike out the testimony of the witness Kirsh. This testimony was competent to show the acts of ownership exercised by Matthews over the animal mentioned from which the presumption might arise that it was his property. The declarations of Kirsh were also admissible to show that the property was afterward found in the possession of McLennan, because it was in his pasture with his brand upon it. It is referable to the doctrine of recent possession of stolen property being admissible as a circumstance to be considered in trial of a charge of larceny. The objection of the defendant ran rather to the weight than to the competence of the testimony. There was no error in refusing to withdraw it from the jury.

3. There are at least two reasons why the statement of Shattuck relating to his interview with the defendant was not admissible in evidence. In the first place, it does not impute to McLennan any utterance whatever. The witness said the defendant "evidenced a desire" to get the case settled, but does not say what act or speech there was which would amount to "evidence" in the judgment of the court.

4. Again, there is nothing inculpatory in wishing to get the case settled. A fair trial would effectually "settle" the matter, and that is a constitutional right of the accused for the assertion of which he cannot be blamed.

5. The testimony of Shattuck, therefore, was not admissible, and the Circuit Court was right in withdrawing it from the jury. The court having done all it could in the matter, the question is whether the defendant's rights were not abused beyond repair not-

withstanding the ruling of the judge. It is easy to conceive a case where an adroit and overzealous prosecutor might put in evidence incompetent matter which would be very damaging to the accused in the estimation of the jury, and yet technically, but not actually, the error would be obviated by excluding the same from their consideration.

Adverting to the discussion of this point by Mr. Justice MCBRIDE in *State* v. *Rader,* 62 Or. 37, 40 (124 Pac. 195, 196), it is at least doubtful whether the fault was cured by striking out the evidence now under discussion. It is there said:

"While in some cases an express instruction to the jury to disregard testimony injuriously admitted is properly held to cure the error, yet the courts are cautious in the application of this rule. It is not an easy task to unring a bell, nor to remove from the mind an impression once firmly imprinted there, and the withdrawal of the testimony should be so emphatic as to leave no doubt in the mind of the juror as to the unequivocal repudiation by the court of the erroneously admitted matter, and even then, in a case where the testimony is evenly balanced or contradictory, courts hesitate to sanction such withdrawal, though it seems absolutely necessary to permit this course in some instances."

The case is not like that of *State* v. *Aiken,* 41 Or. 294 (69 Pac. 683). There at the trial of one defendant the court admitted the statements of another jointly indicted, but not on trial, made after the homicide had been committed with which they were jointly charged. Without specifying the particular statement so as to directly call the attention of the jury to it, the court in the general charge said, in substance, that the jury must not consider any remark made by one of the defendants in the absence of the other after the homicide had been committed. In an opinion by Mr.

Justice MOORE it was decided that this was not suffi-
ciently certain as a withdrawal to call the attention
of the jury to the particular obnoxious evidence, and
so reversed the case. In this instance, while the tes-
timony was directly before the court and at the time
it was offered and rejected, the judge plainly said to
the jurors that it was withdrawn from their considera-
tion and that they need not consider it. This is clearly
sufficient for all practical purposes to bring before
the minds of the jury what is taken away from their
examination. The procedure is to be criticised, if at
all, only on the lines laid down in *State* v. *Rader, supra,*
and, as it is likely that the error will not occur again,
it is dismissed with this comment: Prosecuting officers
should not be swift to get improper testimony before
the jury, lest a formal withdrawal of it afterward fail
to prevent a reversal of the ensuing conviction.

6. Complaint is made that the court permitted evi-
dence to go to the jury indicating that the defendant
had changed the brand on the animals and that he was
concerned in the killing of them. It is claimed that
this tends to prove distinct crimes, separate from the
one mentioned in the indictment. In *State* v. *O'Don-
nell,* 36 Or. 222 (61 Pac. 892), Mr. Justice MOORE sum-
marized the exceptions to the general rule that evi-
dence of crimes other than that charged in the
indictment is inadmissible. He wrote in part as fol-
lows:

"(1) If several similar criminal acts are so con-
nected by the prisoner, with respect to time and local-
ity, that they form an inseparable transaction, and a
complete account of the offense charged in the indict-
ment cannot be given without detailing the particulars
of such other acts, evidence of any or all of the com-
ponent parts thereof is admissible to prove the whole
general plan. * * (3) If the facts and circumstances

tend to show that the prisoner committed an independent dissimilar crime, to enable him to perpetrate or to conceal an offense, such evidence is admissible against him upon an indictment charging the auxiliary crime, when the intent to perpetrate or conceal such offense furnished the motive for committing the crime for which he is put upon trial."

Within the meaning of the doctrine thus announced there was nothing in the testimony under discussion to take it from the jury. If the defendant stole the horses, it would be natural within human experience that he would change the brand upon them by putting on his own, or that, when detection appeared to be imminent, he would endeavor to hide the *indicia* of his crime by slaughtering the animals and disfiguring their bodies. All those things might be part of the general plan of the defendant. At least, the jury was entitled to consider them under proper instructions to that end.

7. Killing the horses might be equally attributable to one of three things: (1) To the commission of malicious mischief defined in Section 1969, L. O. L.; (2) to the desire to conceal an alteration of a brand defined by Section 1954; or (3) to the destruction of stolen property to aid in evading the consequences of the larceny. In any event its value as a circumstance in the case was equivocal. Under such conditions it was for the jury to determine whether it was applicable to support the charge of stealing. Where the evidence of the killing could be applied equally well to one of three possible conditions, the court in a measure intruded upon the prerogative of the jury by giving particular direction of this evidence toward one of those theories to the exclusion of others. The instruction quoted gave impetus to the evidence on that point toward proving a theft. The court cannot

say as a matter of law that the testimony "tends to prove" or points in a certain direction when any other conclusion may be drawn from it with equal propriety. In other words, if the circumstance relied upon is alike referable to several theories besides the one in question, the court is wrong in giving it a trend toward the accusation by saying it tends to prove it. Saying to a jury that certain evidence "tends to prove" the guilt of a defendant is sharply criticised by the opinion in *State* v. *Rader, supra.* The matter is analogous to the doctrine laid down in *Spain* v. *Oregon-Washington R. & N. Co.*, 78 Or. 355 (153 Pac. 470). That was an action against the railway company for ejecting plaintiff from its cars whereby he suffered an injury to one of his arms yet unhealed from a former amputation and was compelled to submit to another operation of the kind. From the testimony it was uncertain which of several causes produced the inflammation requiring the second amputation. It was there said:

"When the evidence leaves the case in such a situation that the jury will be required to speculate and guess which of several possible causes occasioned the injury, that part of the case should be withdrawn from their consideration."

Here the court diverted the attention of the jury from other things to which the killing of the animals was properly referable, and pointedly told them that the circumstance of the killing, if proved, was to be considered as tending to show the guilt of the defendants of the charge of larceny. They were entitled to classify it as tending to show an independent crime disconnected from any larcenous intent which would be to the advantage of the defendant on his trial for theft. They were directed away from that favorable

field of investigation to the injury of the defendant's rights.

In *Shaw* v. *New Year Gold Mines Co.,* 31 Mont. 138 (77 Pac. 515), the court had under consideration a charge of negligence whereby the plaintiff was injured. The rule is thus stated in the opinion:

"The burden of proof is upon plaintiff, and is not satisfied if the conclusion to be reached from the testimony offered is merely a matter of conjecture. If such conclusion be equally consonant with the truth of the allegations, and with some other theory or theories inconsistent therewith, it becomes a mere conjecture, and the rule of the burden of proof is not satisfied. * * If the conclusion to be reached from the testimony is equally consonant with some theory inconsistent with either of the issues to be proven, it does not tend to prove them, within the meaning of the rule above announced. The use of the word 'tend' does not contemplate conjecture. It contemplates that the testimony has a tendency to prove the allegations of the complaint, and not some other theory inconsistent therewith."

It is only where the testimony points to a definite conclusion and to no other that the court is authorized to say to the jury that it "tends" to prove anything. If the conclusion to be drawn from the circumstance in question is equivocal, it is for the jury alone to say what influence and what direction shall be accorded to the evidence on the point. What is here written on this point is not in conflict with *State* v. *Brown,* 28 Or. 147, 163 (41 Pac. 1042); *Coos Bay R. R. Co.* v. *Siglin,* 34 Or. 80, 84 (53 Pac. 504), and *Smitson* v. *Southern Pacific Co.,* 37 Or. 74, 104 (60 Pac. 907), where it was decided, in substance, that under proper circumstances the court may say to the jury that there is testimony "tending to prove" certain things. In those cases the evidence, if believed, had no double

or treble significance as the testimony under considera-
tion here.

It is not deemed necessary to discuss whether more
is shown than that the defendants merely had oppor-
tunity to kill the horses nor to determine whether the
inhibition against founding a presumption upon an in-
ference applied to the case in hand. Suffice it to say
that, if it was legally proved that the defendants killed
the horses, the jurors would be authorized to consider
that fact in connection with other circumstances for
what they might deem it to be worth in deciding upon
the guilt or innocence of the accused.

8, 9. The fact that witnesses had butchered cattle,
sheep or hogs did not necessarily qualify them to give
an expert opinion about how long the horses had been
dead. It is common knowledge, not requiring expert
testimony, that a putrescent or desiccated carcass has
been dead longer than one the flesh of which presents
no indications of decay. Whether the body is stiff
or relaxed, whether the gases of decomposition have
distended it or not, the temperature and moisture prev-
alent at the time, as well as other factors, are phen-
omena to be considered in estimating how long a body
probably has been dead: 1 Witthaus & Becker, Med.
Jur. 923.

10, 11. In the absence of any testimony about
whether the witnesses on this point had made any
systematic or extended observation of such things,
their opinion about how long the horses had been dead
ought not to have been admitted. In any event they
should have described to the jury the appearances and
indicia upon which they based their judgment; for, ac-
cording to State v. Simonis, 39 Or. 111, 116 (65 Pac.
595), even an expert cannot give an opinion upon facts
known to him and not communicated to the jury.

The other assignments of error are unimportant, but for those discussed the judgment is reversed.

REVERSED.

MR. JUSTICE MOORE and MR. JUSTICE HARRIS concur.

MR. JUSTICE BEAN delivered the following dissenting opinion:

I am unable to concur in that part of the opinion which sanctions the ruling of the trial court in holding that the evidence relating to the so-called compromise was inadmissible, and directing the jury not to consider the same. The defendant McLennan was indicted for a felony, the larceny of horses. The witness Bates Shattuck, a merchant, in answer to the question, "What was the conversation between you and Mr. McLennan about this case?" said:

"Why, Mr. McLennan evidenced a desire, of course, mentioned the case, and evidenced a desire to get it settled out of court if possible on account of its coming at his very busy time of the year, and there was nothing definite stated one way or the other."

Upon not being heard by all the jurors and requested to again tell the jury, the witness said:

"This indictment having been brought up against Mr. McLennan, he wished to get it settled and over with if possible, and that is the reason it was mentioned to me. Of course, there was nothing definite said about it, except he wished a settlement if possible out of court.

"Q. He wanted you to approach Mr. Matthews about a settlement?

"A. I was a friend of both parties, and I did that.

"Q. It was by reason of this conversation you had with him you approached Mr. Matthews to settle the case?

"A. Yes, sir."

The witness does not attempt to give the exact language of the defendant, but it is clear from the evidence that he desired and was endeavoring to arrange for a settlement out of court of the criminal action against him after he was indicted, and the jury might reasonably so infer. It is contended by counsel for defendant that in criminal as in civil cases an offer of compromise is inadmissible under Sections 879 and 1533, L. O. L. The last section provides that:

"The law of evidence in civil actions is also the law of evidence in criminal actions and proceedings, except as otherwise specially provided in this Code."

But it is otherwise distinctly provided in relation to compromising a felony. Section 1460, L. O. L., enacts:

"A person may be indicted for having, with the knowledge of the commission of a crime, taken money or property of another, or a gratuity or a reward, or an engagement or promise therefor, upon an agreement or understanding, express or implied, to compound or conceal the crime, or to abstain from a prosecution therefor, or to withhold any evidence thereof, though the person guilty of the original crime has not been indicted or tried."

The compounding or concealing of a crime is also punishable under Section 2040, L. O. L. Under our statute (Sections 1696 to 1698) only the settlement of a misdemeanor may be made between the parties themselves with the sanction of the court. Section 1699 reads thus:

"No crime can be compromised, nor can any proceeding for the prosecution or punishment thereof be stayed upon a compromise, except as provided in this chapter."

In his work on Criminal Evidence (Section 117) Mr. Underhill says that:

"The rule excluding compromises in civil suits does not apply to criminal proceedings."

See, also, *State* v. *Soper,* 16 Me. 293, 295 (33 Am. Dec. 665), where Mr. Justice EMERY said:

"We are not aware that the rule of excluding offers of compromise from being heard in evidence applies to criminal cases. They are not to be compounded. It is not under a searching investigation of acts of larceny, that it is intended a man may buy his peace."

And *State* v. *De Berry,* 92 N. C. 800, the syllabus of which reads thus:

"Where the prisoner, being in jail on a criminal charge, told a party to see the prosecutor and find out if he would consent that the defendant receive 39 lashes and be discharged, held, that such message is relevant and admissible in evidence."

See 8 R. C. L., § 189.

The language of the defendant imports a different wish than a desire to have the case tried in a lawful manner. For the reason that he desired to "get the case settled out of court" he mentioned the matter to Mr. Shattuck. The evidence tended to show an unlawful attempt to compromise or arrange for a settlement of a felony, in order to stifle prosecution, which is inhibited by the statute, and was relevant to show a consciousness of guilt: 12 Cyc. 398. The ruling of the trial court that the jury should not consider the evidence of Shattuck quoted above was favorable to the defendant.

In regard to the portion of the charge to the jury as follows: "I charge you that, if you find from the evidence in this case beyond a reasonable doubt that the defendants killed the horses in question for the purpose of concealment, you may consider the same as tending to show the guilt of the defendants of the

charge in the indictment''—it seems that the scholarly discussion of Mr. Justice BURNETT leaves out of consideration the language of the trial court in effect directing the jury that in order for them to consider the matter of the killing of the horses, they must first "find from the evidence in this case beyond a reasonable doubt that the defendants killed the horses in question for the purpose of concealment."

Therefore the question of the purpose of the killing of the horses was left to the determination of the jury. If the killing was done by defendant for the purpose of concealment, it is difficult to conceive how the matter of wanton injury to animals in violation of Section 1969, L. O. L., which, like the crime charged in the indictment, may be punished as a felony, would figure in the case. The difference between larceny by altering a mark or brand upon horses under Section 1954, L. O. L., and larceny of such animals by stealing under Section 1950, L. O. L., is so slight that a defendant would receive but little comfort in claiming any distinction in that respect under the evidence in this case. Nor would defendant be prejudiced in any way by the trial court's failure to consider the crime of larceny by altering brands. Indeed, the minimum penalty for the latter crime is greater than the minimum for that with which the defendant is charged. If a defendant should assert that the evidence showed he was guilty of the former crime instead of the latter, it might well be said "that the last state of that man is worse than the first." The words "you may consider the same as tending to show," appearing in the latter part of the instruction above quoted, are inapt, and, if taken alone, possibly might be misunderstood by the jury. They are subject to the criticism applied in *State* v. *Rader,* 62 Or. 37 (124 Pac. 195). Never-

theless, when such an instruction is coupled with a charge that the jurors are the "exclusive judges of the weight and value of the evidence given upon the trial," as the jury was instructed in this case, it comes within the sanction of *State* v. *Brown,* 28 Or. 147 (41 Pac. 1042), which was a trial for murder in the first degree, as well as within the other cases cited in the majority opinion. An appellate court should not reverse a judgment of conviction without very cogent reasons when the trial court in charging the jury has adhered to the opinion of the higher court.

Over the objection of defendant's counsel certain witnesses who saw the horses soon after they were killed were permitted to state how long they thought the animals had been dead, to the effect that they looked as though they had been killed the day before. The condition of the carcasses of the animals where the brands had been skinned off and the heads severed would be extremely difficult to describe to the jury so that they could approximate how long the brutes had been killed before they were found. The language of the learned majority opinion upon this question based upon a work of medical jurisprudence illustrates this fact. The plainest way for the witnesses to say how fresh the meat was would be for them to say how long the bodies of the horses appeared to have been dead. An ordinary witness could do this. The ordinary observer—the "man in the street"— is qualified if it affirmatively appears to the presiding judge that he has had sufficient opportunities for drawing the inference which he proposes to state and the capacity necessary to make and state it. Where the statement, therefore, is largely one of fact, or the ground of necessity compelling the admission is that the jury cannot draw the inference themselves because the facts

cannot be fully stated, the qualification of the witness consists, not in skill or special experience, but in the fact that he has had satisfactory data: 17 Cyc., pp. 34, 35. Facts which are made up of a great variety of circumstances, and a combination of appearances which, from the infirmity of language, cannot be properly described, may be shown by witnesses who observed them; and where their observation is such as to justify it, they may state the conclusions of their own minds. In this category may be placed matters involving magnitude or quantities, portions of time, space, motion, gravitation, value and such as relate to the condition or appearance of persons and things: 8 R. C. L., § 186. Mr. Wharton says at page 959 of his work on Criminal Evidence:

"Where any material facts are stated by the witness as warranting the inference that he has sufficient knowledge to form an opinion, it is relevant, but such conclusion must arise from the witness' own personal observation of the facts."

The men had had experience in butchering and handling the meat of animals. A witness may be qualified by practical experience in a field of human activity conferring on him an especial knowledge not shared by men in general from whom the jury is drawn: 17 Cyc. 37.

I am of the opinion that there was no reversible error as assigned in admitting such testimony or in the trial of the cause, and that the judgment should be affirmed.