Argued June 21, reversed July 11, 1916.
Sustained on rehearing January 2, 1917.

## OUTCAULT ADVERTISING CO. *v.* BROOKS.*

(158 Pac. 517; 161 Pac. 961.)

**Bailment—Elements.**

1. An order for advertising material, consisting of cuts and font of type to be held at the expiration of the contract subject to the order of the addressee, on acceptance, consummated a contract by which the possession of specific articles of personalty was to be transferred temporarily from the owner to others to accomplish a special purpose, and hence the agreement was a bailment.

**Bailment—Elements—Delivery.**

2. Delivery is the essential element of a bailment, which trust relation begins when the possession of personalty is transferred to the bailee.

**Bailment—Liabilities of Parties.**

3. Under an order by defendants to "ship us at our expense" advertising material to be held subject to plaintiff's order at the termination of the contract, where the plaintiff delivered the advertising matter for shipment to a carrier selected by it before defendants countermanded their order, the defendants are liable for the sum they agreed to pay for use of the advertising matter.

**Bailment—Contract—Executed Contract—Damages for Breach.**

4. Where defendant ordered advertising matter from plaintiff, which was to be used for one year and then held subject to plaintiff's orders, the contract became executed when the goods were delivered to a carrier consigned to defendant, the same as in the case of a sale, and defendant's refusal thereafter to accept the goods did not render the contract executory so as to prevent plaintiff from recovering the entire contract price and to limit his recovery to damages merely.

[As to difference between a sale and a bailment, see notes in 10 Am. Dec. 490; 2 Am. St. Rep. 711; 94 Am. St. Rep. 216.]

---

*On damage for breach of advertising contract, see note in 22 L. R. A. (N. S.) 272.      REPORTER.

From Marion: PERCY R. KELLY, Judge.

Department 2.    Statement by MR. CHIEF JUSTICE
MOORE.

This action was commenced in March, 1915, by the
Outcault Advertising Company, a corporation, against
John H. Brooks and George Steelhammer, to recover
the sum of $109.20.    The cause, being at issue, was
tried by the court, which made findings of fact in sub-
stance as follows: (1) That at all the times mentioned
herein the plaintiff was, and now is, a corporation
organized and existing under the laws of the State of
Illinois, and the defendants, John H. Brooks and
George Steelhammer, were and are partners engaged
in business at Silverton, Oregon, under the firm name
of Brooks & Steelhammer.    (2) That the defendants
delivered to the plaintiff's agent a writing which
reads:

"To Outcault Advertising Co., 508 S. Dearborn St.,
      Chicago, Ill.
"Order No. ——.                    Date, October 13, 1913.
    "Ship us at our expense as per samples shown,
your Drug Store Boy 'Ad' Service, to cover a period
of one year, beginning Jan. 1st, 1914.    This service
to consist of 52 Drug Store Boy Cuts; 1 font type.
[Signed] Brooks & Steelhammer.    We (or I) agree to
pay you net cash monthly, at the rate of 2.10 per week,
for one year, we (or I) to have exclusive right to use
the above Drug Store Boy 'Ad' service in our city
only, and to hold type and cuts subject to your order
when this contract expires.    Failure to pay any in-
stallment when due renders full amount of this con-
tract due.    This contract cannot be canceled.    Ship all
at one time if possible.
              "[Signed]    BROOKS & STEELHAMMER."

(3) That on October 17, 1913, the plaintiff, upon the
receipt of such order, accepted it and so notified the

defendants. (4) That on October 24, 1913, the plaintiff delivered to the Chicago & Northwestern Railway Company, a common carrier selected by it, the goods so ordered, consigned to the defendants at Silverton, Oregon. (5) That prior to the arrival of such goods, the defendants notified the plaintiff that they would not receive them, and that they had canceled and countermanded the order therefor. (6) That such goods arrived at Silverton, Oregon, and the defendants, though notified thereof, refused to accept them or to make any payment for their transportation. (7) That the defendants have refused to pay any sum on the written contract or to be bound thereby. (8) That the goods so referred to were carried in stock for delivery by the plaintiff, and were not made up on special order of the defendants. As a conclusion of law the court found, ''That an order of nonsuit without prejudice should be made herein.'' A judgment having been given in accordance therewith, the plaintiff appeals.        REVERSED.

For appellant there was a brief over the names of *Mr. Todd A. Rinehart* and *Messrs. McNary, Smith & Shields,* with an oral argument by *Mr. Rinehart.*

For respondents there was a brief and an oral argument by *Mr. Custer E. Ross.*

Opinion by MR. CHIEF JUSTICE MOORE.

1. The question to be considered is whether or not the findings of fact support the conclusion of law predicated thereon. This inquiry necessarily depends upon a determination as to whether or not a delivery of the goods to a common carrier selected by the plaintiff was equivalent to a transfer of the possession from

it to the defendants. As the writing, signed by the defendants, expressly stipulated that they were to hold the type and cuts subject to the plaintiff's order, it conclusively appears from the memorandum that a redelivery of the goods was contemplated by the parties. It will thus be seen that the written order, when accepted by the plaintiff as found by the court, consummated a contract by which the possession of specific articles of personal property was undertaken temporarily to be transferred from the owner to others for the accomplishment of a special purpose, and hence the agreement was a bailment: Elliott, Contracts, § 2985; *State* v. *You,* 20 Or. 215 (25 Pac. 355). At Section 3072 of his valuable work on Contracts, Judge ELLIOTT says:

"The contract is merely executory until delivery by the bailor to the bailee and acceptance by the latter, when the bailment relationship commences."

"The property, the subject of the bailment," says another writer, "must come to the possession of the bailee, and to that end there must be some sort of delivery, actual or constructive": Van Zile, Bail. & Car. (2 ed.), § 18.

In the next section this author further remarks:

"The delivery must be such in every case as will give the bailee absolute and complete control of the property bailed."

To the same effect, see, also, Schouler, Bail. & Car. (3 ed.), § 132.

2. Delivery is the essential element of a bailment, which trust relation begins when the possession of the personal property is transferred to the bailee: Dobie, Bail. & Car., § 10. Mr. Mechem in his work on Sales (Volume 2, Section 1181), in discussing the undertaking of a seller to "send," "ship" or "forward" goods, and the manner of satisfying such obligation, says:

"It is obvious that the agreement of the seller or the direction of the buyer to send the goods to the latter may have a variety of meanings, including even an actual transportation and delivery by the seller to the buyer at the point of destination as a condition precedent to the passing of the title. In the ordinary case, however, where specific goods are sold at one place which the buyer desires to have delivered at another, and the seller expressly or impliedly agrees, or the buyer directs him, to send them to that place, without specifying the means or method, this agreement or direction is satisfied when the seller has delivered the goods to a common carrier consigned to the buyer at the place specified."

To the same effect, see Benjamin on Sales (2 Am. ed.), §§ 181, 693; 24 Am. & Eng. Ency. Law (2 ed.), 1071; 35 Cyc. 193; *Woodbine Children's Clothing Co.* v. *Goldnamer,* 134 Ky. 538 (121 S. W. 444, 20 Ann. Cas. 1026); *Gibson* v. *Inman Packet Company,* 111 Ark. 521 (164 S. W. 280, Ann. Cas. 1916A, 1043).

3. In *Herring-Marvin Co.* v. *Smith,* 43 Or. 315 (72 Pac. 704, 73 Pac. 340), it was determined that a contract of conditional sale, providing for shipment by the vendor at a distant point "via best route," stipulating for safe delivery on cars at the city where the purchaser lived, at which time he would repay the vendor the freight bill, was a contract to deliver to the buyer at the place where he lived, and a delivery to the carrier for shipment was not a delivery to the buyer. In that case the part of the written order that is deemed material reads:

"Please ship as directed one number 185 safe * * marked to James R. Smith, town of La Grande, county of Union, and State of Oregon, via best route, for which I agree to pay to your order the sum of $321.00 gold coin, rent as follows: Fgt. on arrival, and balance in six equal payments of 30 days each, to date from arrival of safe in La Grande, or 5 per cent said balance

in 30 days from arrival, for safe delivery on cars at La Grande, Oregon.''

In rendering that decision Mr. Justice WOLVERTON quotes from Benjamin on Sales (2 ed.), Section 693, to the effect that a delivery to a common carrier, pursuant to a purchaser's order to ''ship'' the goods requested, was a surrender of the possession to an agent of the purchaser, but that a stipulation for safe delivery on cars at place of destination took the case out of that rule.    There is no great distinction between a conditional sale and a bailment: Mechem, Sales, § 582. In *Outcault Advertising Co.* v. *Buell,* 71 Or. 52 (141 Pac. 1020), under a written request similar to that herein, it was held that when one, ordering advertising matter, wrote to the bailor, stating he could not arrange with his local paper for satisfactory advertising space within reasonable terms, and requesting that the material ordered should not be forwarded till he felt in better condition to handle it, the letter did not constitute a sufficient revocation of the order, even if the bailee had a right to rescind.    In that case a part of the material ordered had been sent by express, and the charges therefor paid by the bailee.    This receipt and payment amounted at least to a partial delivery and acceptance of the goods ordered.

It will be remembered that the written order contained the clause, ''Ship us at our expense'' the goods requested.    The words last quoted authorized the plaintiff to select as the defendants' agent the common carrier so chosen.    The bailor having thus complied with all the terms of the contract and delivered the goods to the defendants before they countermanded the order, they are liable thereunder for the sum of money which they agreed to pay for the use of the advertising matter.

The findings of fact do not support the conclusion of law based thereon; and, such being the case, the judgment is reversed, and the cause will be remanded, with directions to render a judgment in favor of the plaintiff and against the defendants for the sum of $109.20.                                        REVERSED.

MR. JUSTICE BEAN, MR. JUSTICE BURNETT and MR. JUSTICE HARRIS concur.

---

Argued on rehearing December 12, 1916, former opinion sustained January 2, 1917.

ON REHEARING.

(161 Pac. 961.)

In Banc.    Former opinion adhered to on rehearing.

For appellant there was a brief over the names of *Messrs. McNary, Smith & Shields* and *Mr. Todd A. Rinehart,* with oral arguments by *Mr. Roy F. Shields* and *Mr. Rinehart.*

For respondents there was a brief and an oral argument by *Mr. Custer E. Ross.*

MR. JUSTICE BURNETT delivered the opinion of the court.

4. This is the second hearing of this case. In an opinion written by Mr. Chief Justice MOORE and reported *ante,* p. 434 (158 Pac. 517), the court reversed a nonsuit, entered on motion of the defendants, and directed a judgment to be rendered by the Circuit Court in favor of the plaintiff. By their petition for

rehearing the defendants urged upon us that the findings of fact showed the contract involved to have been yet executory when the defendants canceled the order, with the consequence that the plaintiff had no cause of action for the stipulated price, but was restricted to an action for damages for the breach of the covenant by the defendants. It will be remembered that the latter signed and delivered to the plaintiff through its agent the following writing:

"To Outcault Advertising Co., 508 S. Dearborn St., Chicago, Ill.

"Order No. ——,                    Date Oct. 13, 1913.

"Ship us at our expense as per samples shown your Drug Store Boy 'Ad' Service, to cover a period of one year, beginning Jan. 1st, 1914. This service to consist of 52 Drug Store Boy Cuts, 1 font type. Brooks & Steelhammer. We (or I) agree to pay you net cash monthly, at the rate of 2.10 per week, for one year, we, (or I) to have exclusive right to use the above Drug Store Boy 'Ad' service in our city only, and to hold type and cuts subject to your order when this contract expires. Failure to pay any installment when due renders full amount of this contract due. This contract cannot be canceled. Ship all at one time if possible.

                    "BROOKS & STEELHAMMER."

—that the plaintiff accepted this order October 17, 1913, and on the 24th of that month delivered the goods to a common carrier selected by the plaintiff, consigned to the defendants at their place of business at Silverton, Oregon, but that before the goods arrived, they notified plaintiff that they would not receive them, and that they had canceled and countermanded the order. It is agreed that upon the arrival of the chattels at Silverton the defendants refused to pay the freight, or have anything to do with them.

As contended by the defendants, one of the things contemplated by the contract was a bailment of the plaintiff's property by which the defendants were to use it for a period, and then hold it subject to the plaintiff's order. This, however, does not change the analogous principle governing a contract for the outright sale of the goods to the effect that the agreement becomes executed as to the seller when he has fulfilled all its conditions incumbent upon him. In the present juncture the proposition was to vest in the defendants a qualified property in the chattels mentioned. The contract was complete when the order of the defendants to that effect was accepted by the plaintiff. It was binding at that time on both parties. As shown in the former opinion, it became an executed agreement on the part of the plaintiff when it delivered the goods to a common carrier consigned to the defendants. Nothing more remained for the plaintiff to do. It had complied with every feature of its contract. It is not apropos to say that because the defendants refused to receive the goods no bailment was created, and hence the contract was yet executory, with the result that the defendants had a right to rescind the same subject to an amercement in damages at the suit of the plaintiff. By the same token the defendants could say that the contract was yet executory at any time when they refused to pay a prescribed installment of the price, although they may have used the type and cuts. The agreement having been fully executed by the plaintiff, it remained for the defendants to carry out their part, and they cannot say that their default in performance, including the acceptance of the goods, made the contract still executory as to the plaintiff, with the attendant right of the defendants to rescind, subject to damages. It is true no bailment ensued,

but the plaintiff did everything it could to bring about that result, and so put the contract past the executory stage. A case very much like the one in hand is *Ware Bros. Co.* v. *Cortland Cart & Carriage Co.,* 192 N. Y. 439 (85 N. E. 666, 127 Am. St. Rep. 914, 22 L. R. A. (N. S.) 272), which decides that:

"The damages for revocation of a contract to permit an advertisement to run in a periodical for a year is *prima facie* the contract price for the service."

In short, the defendants directed the plaintiff to ship the goods, and promised to pay. The plaintiff did ship the goods. The conclusion is that the defendants must pay as they stipulated. We adhere to the former opinion.

REVERSED. OPINION APPROVED ON REHEARING.