Argued at Pendleton November 1, 1921, reversed and remanded
January 10, rehearing denied February 7, objections to cost bill
overruled February 7, 1922.

# STATE *v.* KEELEN.

(203 Pac. 306; 204 Pac. 162; 204 Pac. 164.)

**Criminal Law—Where the State can Rely on Several Criminal Acts,
the Court Should Compel an Election When Otherwise Accused
will be Prejudiced.**

1. Whether the trial court should compel the prosecution to elect
the transaction upon which it relies is largely a matter of discre-
tion, but upon seasonable application it should compel an election
when it appears that if the application is denied the defendant will
be prejudiced or prevented from properly making his defense.

**Criminal Law—Refusal to Compel State to Elect Occasion on Which
It Would Rely in Larceny Prosecution Held not Error.**

2. In prosecution for larceny of. an automobile given by its
owner to D. to take to a garage and to leave there, from which D.
afterward stole it and defendant sold it, since the events before
removing it from the garage were relied on to show the nonconsent
of the owner of the car and those transpiring thereafter to show
the relation of defendant to D., a refusal to require the state to
elect whether it would rely on the taking from the owner, the tak-
ing from the garage, or the sale was not erroneous.

**Criminal Law—Refusal of Instruction on Proposition That One Who
had Charge of Car was a Bailee not Error, Where It Ignored
Evidence.**

3. In prosecution for larceny of an automobile, where the auto-
mobile had been sent by the owner by D., defendant's employee,
to a garage, where he was to leave it and from which it was after-
ward stolen by D. and sold by the defendant, the refusal of an in-
struction based upon the proposition that D. was a bailee was not
error, as it ignored the evidence that the bailment, if any, termi-
nated before the car was taken to defendant's place of business.

**Larceny—Statute Defining Larceny by Bailee not Intended to In-
clude What was not Larceny at Common Law.**

4. The statute defining crime of larceny by a bailee was not in-
tended to include what was not larceny at common law.

**Larceny—Stealing of Property by One Having the Bare Charge of
It was Larceny at Common Law.**

5. One having the bare charge or custody of personal property,
such as agent or servant, who fraudulently converted such property
to his own use, was guilty of larceny at common law.

---

4. For authorities discussing the question of distinction between
larceny and embezzlement, see notes in 13 Ann. Cas. 882; 11
A. L. R. 801; 13 A. L. R. 319.

**Larceny — Custodian of Automobile Held not a Bailee and His Fraudulent Conversion to Constitute Larceny.**

6. A person intrusted with an automobile to drive to a town and put into a garage, where his control of it ended, and who was later warned to leave it alone by the owner's agent, was not a bailee, and his subsequent conversion of the car to his own use constituted larceny.

**Larceny—Evidence Held Sufficient to Go to the Jury.**

7. In a prosecution for larceny, evidence *held* sufficient to go to the jury.

**Criminal Law—Larceny—Instruction if Stolen Property was Found in Possession of Defendant His Failure to Explain Might be Considered as Tending to Show Guilt Held Prejudicial—Inference from Possession of Stolen Goods Stated.**

8. Where evidence showed that D. stole a car and took it to defendant's place of business, where it was sold by defendant without claim of ownership, the inference to be drawn from defendant's possession, including his explanations, related to the question of whether he was an accomplice, and an instruction that, if the stolen car was found in defendant's possession, his failure to explain how he obtained it might be considered a circumstance tending to show his guilt, when considered with other evidence, instead of confining jury to consideration of defendant's possession and his explanation to determine whether he was an accomplice of D., permitted conviction to rest on confessed possession unsatisfactorily explained, without considering conflicting evidence of ownership and defendant's connection with D. as an accomplice, and was prejudicial error.

**Larceny—Possession of Stolen Property is Admissible—Inference of Guilt may be Drawn Therefrom, and Question is for Jury.**

9. In a prosecution for larceny, the recent possession of stolen property by defendant is circumstantial evidence to be considered by the jury with the other facts in the evidence in determining the guilt of the defendant, and it is the jury's province to say what inference shall be drawn, and whether an inference of guilt will be drawn depends upon the character of the property, nature of the possession, and its proximity in time with the theft.

**Larceny—Inference of Guilt from Recent Possession of Stolen Property is Based on Possession, not on Nature of Explanation.**

10. In larceny cases the inference of guilt which arises from recent possession of stolen property depends upon the recent possession, and not a lame explanation or absence of explanation, the purpose of which is to rebut the inference that arises or may arise from the fact of possession.

**Criminal Law—State must Prove Defendant Guilty Beyond Reasonable Doubt.**

11. The burden of proving defendant guilty beyond reasonable doubt is on the state throughout the trial, and the state in a larceny case cannot be aided, except negatively, in maintaining the

burden, nor relieved therefrom by the failure of one accused to make an explanation of the possession of stolen property, nor by any explanation made, however unsatisfactory.

## ON PETITION FOR REHEARING.

**Criminal Law—Where Defendant was not Present at Commission of Crime by Codefendant, State must Show Beyond Reasonable Doubt That He Aided, Abetted, Counseled, or Advised the Acts.**

12.   The abrogation by Sections 1458, 2370, Or. L., of the distinction between accessories before the fact and principals did not change the rules for juries in determining the weight and effect of evidence, and, although one aiding and abetting a crime, but not present, is a principal, yet when tried separately, and the evidence shows he was not present and did not directly commit the acts constituting it, but that they were committed by his codefendant, the state must show to the jury's satisfaction beyond a reasonable doubt that the defendant did aid or abet, counsel or advise, its commission.

**Criminal Law — Notwithstanding Statutes Abrogating Distinctions Between Accessories and Principals, Whether Defendant Aided and Abetted is a Jury Question.**

13.   Sections 1458, 2370, Or. L., abrogating the distinctions between accessories and principals in crime, did not eliminate the issue of fact for the jury, whether the defendant aided and abetted his codefendant who committed the acts constituting the crime.

**Criminal Law—Larceny—Possession of Stolen Goods may be Considered by Jury—Instruction as to Possession of Stolen Goods Susceptible of Construction That Defendant Committed the Acts Held Error.**

14.   The defendant's possession of stolen property was for the jury's consideration, with other evidence, in determining whether he did aid and abet another in the commission of the acts constituting the larceny, but it was improper to instruct concerning such possession as though the evidence was susceptible to the construction, squarely opposed to the uncontradicted direct evidence, that the defendant committed such acts or was present when they were committed.

**Criminal Law—Instruction as to Explanation of Possession of Stolen Goods Tending to Show Defendant's Guilt Held Improper.**

15.   The use of the phrase "his failure to make such explanation may be considered by you as a circumstance tending to show defendant's guilt," in an instruction, relating to defendant's possession of stolen goods, particularly in a case where more than one conclusion may be drawn from the evidence, is subject to criticism.

**Criminal Law—Instructions to be Given on New Trial not Determined in Advance.**

16.   Matters of law which should be stated to the jury upon new trial depend upon the evidence adduced, the manner in which such trial is conducted, and requests of the parties, so that whether a

particular instruction, or an instruction upon a particular matter, should be given, cannot be accurately determined by the Supreme Court in advance of the new trial.

### ON OBJECTIONS TO COST BILL.

**Costs—Judgment may not be Rendered Against County for Costs, Unless Authorized by Statute.**

17. The county is not a party to a criminal action upon appeal, and a judgment for costs and disbursements therein cannot be given against it unless authorized by statute.

**Counties—The Legislature may Require County in Which Action Arises to Pay Costs on Appeal.**

18. The state acts through and by the county in the enforcement of criminal statutes, and the legislature has power to require a county in which a criminal action arises to pay the costs in such action on appeal, including those made by the defendant.

**Costs—County Held Liable for Costs and Disbursements upon Reversal of an Appeal from a Criminal Conviction.**

19. Under Laws of 1921, Chapter 88, the county is liable for costs upon the reversal of an appeal in a criminal action by taxation thereof in the Supreme Court, and the word "costs" as used in the statute, when considered in connection with Chapter 322, includes necessary disbursements upon appeal, in view of Sections 577, 579, 3681, Or. L.

From Union; J. W. KNOWLES, Judge.

Department 2.

The defendant was jointly indicted with one Dooley and charged with the larceny of one Ford automobile, the personal property of George Robertson. As a result of a separate trial, the defendant Keelen was found guilty and judgment of conviction entered against him, from which he has appealed.

At the trial it appeared that George Robertson purchased the car from M. J. Goss about November 5, 1920. Robertson is a laboring man, and had come to La Grande a few days before he purchased the automobile. There he met Dooley, who was jointly indicted with the defendant, having had a slight acquaintance with him previously. Dooley was living and "batching" in a shack upon the outskirts of

La Grande. Robertson occupied the shack with Dooley during the time that he was in La Grande. They "batched" there, Robertson furnishing most, if not all, of the provisions, and in addition Robertson advanced Dooley some money. Dooley was without funds, while Robertson had about $300 on deposit in one of the banks at La Grande after purchasing the automobile.

Robertson was unable to drive the car, so Dooley drove the same with Robertson's consent. It was the intention of Robertson to drive from La Grande to Portland, and it was the understanding of the parties that Dooley would operate the car upon that journey. Before Robertson was prepared to start to Portland, a heavy snow fell in the Blue Mountains, and the contemplated trip to Portland was abandoned. On November 27th Robertson left La Grande for Portland and had Dooley drive him to Hilgard. When they reached Hilgard, Robertson directed Dooley to return the car to Hilton's Garage in La Grande, where Robertson had been keeping it. Pursuant to that direction, Dooley did place the car in Hilton's Garage immediately upon his return to that city the same evening. Those in charge of Hilton's Garage placed a tag upon the automobile and inscribed Dooley's name thereon, with the date the car was left there.

On December 1st Robertson had a firm of attorneys in Portland write to M. J. Goss, asking Goss to see if Dooley had placed the car in storage, and if so, with whom he had placed it, and further directed Goss in case Dooley had not placed the car in storage, to store the same and see that it was kept there until Robertson should call for it, and not let anyone use or run the car without his permission. Pursuant

to these directions, Goss ascertained that the car was stored at Hilton's Garage and conveyed to the latter the directions that Robertson had given him. Hilton's Garage, however, failed to remove or change the tag they had theretofore placed upon the automobile.

The defendant Keelen conducts an oil and gasoline filling station in La Grande, known as the Empire Filling Station. He formed a slight acquaintance with Robertson before the latter left for Portland in November, and had seen Robertson and Dooley riding about in the car, Dooley driving. They had purchased gasoline at his filling station a few times.

Some time in February, 1921, Dooley commenced to occupy a room at Keelen's house and worked about the filling station, and later he roomed and boarded with Keelen. In the latter part of March, 1921, Dooley went to Hilton's Garage in company with a deputy sheriff, and took Robertson's automobile therefrom, paid the storage charges thereon, and drove the same to the Empire Filling Station. Dooley professed to require the presence of the deputy sheriff in order that he might drive the car from Hilton's Garage to the Empire Filling Station without danger of being arrested because of the absence of a 1921 auto license. Dooley had not taken the car out of Hilton's Garage after placing the same in storage on November 27, 1920, and had not attempted to do so. Immediately after Dooley took the car to the Empire Filling Station, a tag was placed thereon by defendant, announcing that the car was for sale at a price of $275. The defendant had no facilities for housing cars at the filling station, so the car remained outside from the time Dooley took it there until it was sold on April 13,

1921. On that date defendant sold the car to R. W. Teeters, a train-dispatcher, residing at La Grande, for the sum of $275. The record does not disclose what defendant did with the proceeds of the sale, although he intimated that he paid the same to Dooley.

Robertson returned to La Grande in May, 1921, and upon finding his car gone, he made inquiries to ascertain its whereabouts, and enlisted the aid of the sheriff and others, including M. J. Goss, from whom he purchased the car. When inquiry concerning the car was made of defendant, he asserted that the car belonged to Dooley; that he was present and aided in a settlement between Dooley and Robertson, wherein Robertson had transferred his interest in the car to Dooley, at which time Dooley had paid Robertson something like $85 in cash and made good a check that Robertson had drawn upon a bank where he had no funds; that he did not know to whom he had sold the car, and threatened that if Robertson pressed his claim that he would report him to the district attorney for prosecution upon a charge of "bootlegging" and operating a still. Defendant also stated that a man by the name of Charles Lombard (a fictitious character), was a witness to the settlement and the transfer of the automobile to Dooley by Robertson. Later when Robertson instituted a replevin suit to recover the automobile from Teeters, Keelen insisted that the automobile described in the replevin papers was not the one sold by him to Teeters; that the numbers were different. It appeared in evidence that when Goss was making the transfer of the automobile to Robertson, Dooley read to Goss the motor and serial numbers that were placed in the bill of sale by Goss, and in doing so gave the wrong figures; that Robertson had ample

funds in the bank to cover all checks drawn by him; and that there was no foundation to the accusation made by defendant that Robertson was a "bootlegger" or operating a still.   REVERSED AND REMANDED.

For appellant there was a brief and oral arguments by *Mr. R. J. Green* and *Mr. Jno S. Hodgin.*

For respondent there was a brief over the names of *Mr. I. H. Van Winkle,* Attorney General, and *Messrs. Ivanhoe & Ringo,* with an oral argument by *Mr. Ed. Wright,* District Attorney.

McCOURT, J.—Defendant assigns as error the action of the court in overruling his motion to require the state to make an election of the act that the state claimed constituted "the act of larceny or felonious taking—whether the time the car was turned over to Dooley near Hilgard, or the time it was taken from Hilton's Garage, or at the time it was sold by Dooley to Teeters." Defendant's motion was made after the statement of the prosecuting attorney to the jury had been made and before any testimony was taken, and was based upon the rule that in criminal actions the prosecution is compelled and required to prove some particular act constituting the crime and rely upon the same for a conviction: *State* v. *Eggleston,* 45 Or. 346, 358 (77 Pac. 738); *State* v. *Coss,* 53 Or. 462, 467 (101 Pac. 193); *State* v. *Hardin,* 63 Or. 305, 308 (127 Pac. 789).

1. Whether in any case the court should compel the prosecution to elect the transaction upon which it will rely for conviction is largely a matter of judicial discretion. The court, upon seasonable ap-

plication, should compel an election when it appears that if the application is denied, the defendant will be prejudiced or he will be prevented from properly making his defense: 1 Bishop's New Criminal Procedure, §§ 454, 459, 460, 462; *State* v. *Hardin,* 63 Or. 305, 308 (127 Pac. 789).

2. Defendant's motion to elect was made before any evidence had been introduced in the case, and so far as appeared from the opening statement of the attorney for the state, the prosecution intended to rely upon the taking of the car from Hilton's Garage as the transaction constituting the larceny charged in the indictment. It also appeared that the other matters referred to in the statement were collateral thereto, and that those transpiring before the car was taken from Hilton's Garage would be depended upon to show the nonconsent of the owner of the car to the taking, while those transpiring thereafter would be relied upon in part to show the relation of the defendant to Dooley. The situation presented did not require the court to compel the state to elect, and no error was committed in denying defendant's motion.

3–6. Defendant requested, and the court refused, to give the following instruction:

"I instruct you that if you find from the evidence that the said George Robertson was the sole owner of the said automobile, and that he intrusted and delivered to the said C. E. Dooley the said automobile to be safely kept by him, and that said C. E. Dooley retained the possession thereof, and placed the same in the custody of a garage claiming the right to possession, paying the garage fees, and that the same never passed from his possession until he delivered the same to the defendant T. J. Keelen to sell, and that the defendant T. J. Keelen sold the same and gave the price to the defendant C. E. Dooley, then I

instruct you that under the indictment in this cause there was no trespass, and it will be your duty to return a verdict of not guilty."

By the foregoing request and by requests made to direct the jury to acquit, defendant pressed upon the court the contention that Dooley was a bailee of the automobile within the meaning of the criminal statutes, and as the evidence showed the absence of a trespass by Dooley in obtaining possession of the car, the offense of Dooley, if any, was larceny by bailee, and not larceny; and that therefore the proof would not sustain the charge against the defendant of conspiring with Dooley in the commission of the offense of larceny. This contention is predicated upon the established rule that to prove one offense will not support a conviction upon an indictment charging a different offense. Defendant contends that the refusal of the court to direct the jury as requested was error.

The evidence, the substance of which is recited in the foregoing statement, discloses that Dooley, jointly indicted with defendant, was given the bare charge or custody of the automobile by the owner, with the understanding that Dooley would at once return the same to the garage at La Grande, where Robertson had been keeping the same.

The statute defining the crime of larceny by bailee was not intended to include that which is not larceny at common law: 1 Wharton's Criminal Law (10 ed.), § 1027; *State* v. *Muck You*, 20 Or. 215 (25 Pac. 355). One having the bare charge or custody of personal property, such as an agent or servant, who fraudulently converted such property to his own use was guilty of larceny at common law.

"It is a clear maxim of the common law that where one has only the bare charge or custody of the goods of another, the legal possession remains in the owner, and such person may be guilty of trespass and larceny in fraudulently converting the same to his own use." 17 R. C. L. 43.

All the authorities support the foregoing text. See 2 Bishop's Criminal Law, §§ 823, 824; 2 Wharton's Criminal Law (11 ed.), secs. 1195, 1196; 20 Corpus Juris, 418, note 76; *Holbrook* v. *State,* 107 Ala. 154, (18 South. 109, 54 Am. St. Rep. 65); *Colip* v. *State,* 153 Ind. 584 (55 N. W. 739, 74 Am. St. Rep. 322); *Dignowitty* v. *State,* 17 Tex. 521 (67 Am. Dec. 670); *Justices* v. *People,* 90 N. Y. 12 (43 Am. Rep. 135); *State* v. *Anderson,* 25 Minn. 66 (33 Am. Rep. 455); *Eggleston* v. *State,* 129 Ala. 80 (30 South. 582, 87 Am. St. Rep. 31, 35, and note); *Williams* v. *State,* 165 Ind. 472, (75 N. E. 875, 2 L. R. A. (N. S.) 248); *Chanock* v. *United States,* 5 App. D. C. 54 (267 Fed. 612, 11 A. L. R. 799).

It is sometimes difficult to distinguish between a possession incident to a bailment and a bare charge or custody of property, and in a few jurisdictions the distinction between custody and possession, as determining the offense, is not recognized: 9 R. C. L. 1267; 20 Corpus Juris, 419. However, the above citations disclose that in most jurisdictions the distinction is recognized and preserved. In the case of *Shipp* v. *Patten,* 123 Ky. 65 (93 S. W. 1033), the court quoted with approval from 1 Robertson's Ky. Criminal Law, Section 420, as follows:

"There is a difference between the terms 'custody' and 'possession.' Possession is the present right and power to control a thing. A person has the custody of property, as distinguished from the possession, where he merely has the care and charge of it for one who retains the right to control it, and who

therefore retains constructive possession. Where goods are delivered by the master to his servant or other agent, he parts with the custody only, and not the possession; he has constructive possession. A servant, therefore, or other agent, who has merely the care and custody of his master's goods, is guilty of larceny if he converts them to his own use without his master's consent.''

To the same effect, see *Warmoth* v. *Commonwealth,* 81 Ky. 133, 135; *People* v. *Burr,* 41 How. (N. Y.) 293; *Emmerson* v. *State,* 33 Tex. Crim. Rep. 89 (25 S. W. 289, 290).

This court in *Outcault Advertising Co.* v. *Brooks,* 82 Or. 434 (158 Pac. 517, 161 Pac. 961), had under consideration the essentials of a bailment, and in the opinion in that case Mr. Chief Justice MOORE quoted with approval from Elliott on Contracts, Section 3073, as follows:

''The delivery must be such in every case as will give the bailee absolute and complete control of the property bailed.''

Dooley's authority over the automobile was restricted to the narrow limits of driving the car the short distance from Hilgard to La Grande and placing the same in the garage, and in no sense extended to control of or ownership or right therein adverse to Robertson, and his subsequent conversion of the car to his own use constituted larceny.

If it be conceded that under any aspect of the evidence, Dooley was a bailee of the automobile, the bailment was terminated when the purpose of Dooley's custody of the car was accomplished by delivery thereof to Hilton's Garage, or at the latest, when M. J. Goss, at the direction of Robertson, had the car placed in ''dead storage'' in Hilton's Garage: *State* v. *Dooley* (just decided).

The requested instruction and defendant's requests that the court direct the jury to acquit the defendant wholly ignore the undisputed evidence that the bailment, if one ever existed, was terminated before Dooley took the car from Hilton's Garage to defendant's place of business, and the court did not err in refusing to direct the jury as requested by defendant.

7. Defendant urged as an additional reason for granting his motion to direct the jury to acquit him that the evidence failed to show that defendant was associated with Dooley in the larceny of the car. We think there was sufficient evidence to take the case to the jury upon this question, and no error was committed in refusing defendant's motion.

Defendant also claims that the court erred in its instruction .to the jury wherein they were directed in effect that the act or declaration of one conspirator, while engaged in or pursuant to the common- object or design, is the act or declaration of all. The court gave several instructions upon this point, and taken together they correctly state the law.

8. Defendant next complains that the court erred in giving the following instruction:

' "I instruct you that if you believe from the evidence in this case, beyond a reasonable doubt, that the Ford automobile described in the indictment, was stolen from George Robertson, and that George Robertson was the owner thereof, and that shortly thereafter, the same was found in the possession of the defendant, and defendant has failed to explain how he obtained such possession, his failure to make such explanation may be considered by you as a circumstance tending to show defendant's guilt, and given such weight as you may deem proper in connection with the other evidence in the case, I instruct you, however, that such explanation of the defendant is

sufficient, if it raises a reasonable doubt in the minds of the jury as to the guilt of the defendant.''

The defendant contends that the above instruction, upon which error is assigned, was not applicable in defendant's case, for the reason that under the testimony his possession or custody of the automobile ceased to be evidence against him, and did not require him to make an explanation, and that therefore the direction given by the court, without any basis in the testimony, in effect, told the jury that his possession was a suspicious circumstance that enmeshed him in a situation from which he must extricate himself.

9. In the trial upon a charge of larceny, evidence that recently stolen property was found in the possession of the defendant is circumstantial evidence to be considered by the jury with the other facts in evidence in the case in determining whether defendant is the person who stole the property described in the indictment: 2 Bishop's New Criminal Procedure, § 739. The jury, though they are not bound to do so, may infer from such evidence, considered with all the other facts in evidence in the case, that the accused is the person who stole the property, and whether the jury will in a particular case draw such an inference from the evidence depends upon the character of the property, the nature of the possession and its proximity in time with the theft: *State* v. *Pomeroy,* 30 Or. 16, 25 (46 Pac. 797).

It is the exclusive province of the jury to say by their verdict what inference, or whether any inference at all, shall be drawn from the fact of recent possession of stolen property: *State* v. *Sally,* 41 Or. 366 (70 Pac. 396).

10. It is the recent possession of stolen property, and not a lame explanation, or the absence of expla-

nation, upon which the inference mentioned may be based: *State* v. *Brinkley,* 55 Or. 134, 138 (104 Pac. 893, 105 Pac. 708). The office of the explanation is to rebut the inference that arises, or may arise, from the fact of possession: 17 R. C. L. 74.

11. The burden of proving the defendant guilty, beyond a reasonable doubt, continues with the prosecution throughout the trial. The state in a larceny case cannot be aided, except negatively, in maintaining that burden, nor relieved therefrom by the failure of one accused to make an explanation of the possession of stolen property, nor by any explanation made, however unsatisfactory: *State* v. *Hutchison,* 121 Minn. 405 (141 N. W. 483).

The absence of reasonable explanation in such a case may. aid the unfavorable inference to be drawn from recent possession of stolen property, just as and only as, any evidence is aided or strengthened by the failure of a party to produce evidence to rebut it, when apparently it is in his power to do so.

The time and the circumstances under which both Dooley and defendant came into possession of the property and the facts of and connected with such possession were undisputed and were clearly established by direct evidence given by eye-witnesses, and nothing was left to inference in respect thereto: *State* v. *Warden,* 94 Mo. 648 (8 S. W. 233); *State* v. *Spencer,* 4 Penne. (Del.) 92 (53 Atl. 337).

The direct evidence traced the possession to defendant and at the same time it clearly explained that he was not present when the car was taken, and that he did not actually take the same. The direct evidence further showed without contradiction that Dooley alone took the car from the place where it was kept and removed it to defendant's place of business,

where it was offered for sale, and later sold by defendant without any claim or assertion of ownership by him.

In the light of the evidence, the inference, if any, to be drawn from the facts surrounding defendant's possession, including his explanations in respect thereto, related to the question of whether defendant was an accomplice of Dooley; the jury were authorized to consider those facts, together with all other facts in evidence in determining whether defendant conspired with Dooley to steal the car, or aided and abetted him in so doing, provided of course they were first satisfied from the evidence, beyond a reasonable doubt, that Dooley did steal the car, as charged.

The instruction (if it was proper to give any at all upon that matter) should have confined the jury in their consideration of the evidence of defendant's possession of the automobile, and his explanation concerning the same, to the determination of whether defendant was an accomplice of Dooley, as indicated; but instead the court broadly directed the jury that such evidence might be considered by them as a circumstance tending to show defendant's guilt; thereby authorizing the jury to drop consideration of the conflicting evidence of ownership of the property, and of defendant's connection with Dooley in the larceny thereof, and to rest a verdict of guilty on the confessed possession unsatisfactorily explained: *State* v. *Humason,* 5 Wash. 499 (32 Pac. 111). This was prejudicial error, for which the judgment of the Circuit Court should be reversed.

We have examined the record in connection with the other errors assigned and relied upon by defendant, and conclude that no error was committed by the court in respect thereto.

The judgment of the Circuit Court is reversed and the cause is remanded to the Circuit Court for a new. trial.          REVERSED AND REMANDED.

---

Rehearing denied February 7, 1922.

ON PETITION FOR REHEARING.

(204 Pac. 162.)

In Banc.

REHEARING DENIED.

McCOURT, J.—The attorneys for the state have filed a petition for rehearing. Therein it is suggested that the conclusion of the court in its opinion herein, that the instruction given by the trial court concerning the possession of recently stolen property was not applicable under the facts of this case, ignores the abrogation of the distinction between accessories before the fact and principals in crimes accomplished by Sections 1458 and 2370, Or. L.

12. The opinion herein does not have the effect claimed. Abrogation of the distinction between accessories before the fact and principals in crimes did not change the rules of law for the guidance of the jury in determining the weight and effect of the evidence addressed to them. Although one who aids and abets in the commission of a crime, though not present, is a principal under the statute, and should be tried and punished as such, yet when such person is tried separately, and the evidence shows, as it did in this case, that he was not present at the commission of the crime charged, and that he did not directly commit the acts constituting the crime, and that such acts were committed by his codefendant, it is necessary

for the state in order to secure a conviction, to produce evidence which satisfies the jury beyond a reasonable doubt, that the defendant did aid or abet, counsel or advise, the commission of the acts constituting the crime; if the jury is so satisfied, they are authorized to return a verdict of guilty against the defendant as charged, and this satisfies the statute, for the defendant in every case is charged as a principal.

13. Under the evidence in this case an important issue of fact was presented for determination by the jury, to wit: Did defendant aid and abet his codefendant Dooley in the commission of the acts constituting the crime? It was necessary for the state to establish the affirmative of that issue, beyond a reasonable doubt, before the jury was warranted in finding the defendant guilty. The statute abrogating the distinction between accessories and principals in crime did not eliminate that issue nor relieve the state from establishing the affirmative thereof; the character of evidence and the degree of proof requisite to discharge the burden resting upon the state in respect thereto was not changed or diminished by the statute.

14. Defendant's possession of the property was an item of evidence to be considered by the jury with the other evidence in the case, in determining whether defendant did aid and abet Dooley in the commission of the acts constituting the crime.

But it was improper to instruct the jury concerning such possession, as though the evidence was susceptible to the construction (squarely opposed to the uncontradicted direct evidence) that defendant committed such acts, or was present when they were committed. This was the vice of the instruction given

by the Circuit Court and for which the case is reversed.

In the petition for rehearing the attention of the court is directed to an instruction almost identical in language, which was approved by this court, in the case of *State* v. *Minnick,* 54 Or. 86 (102 Pac. 605). In view of our conclusion that such an instruction was not applicable in this case under the evidence adduced upon trial, the approval of the instruction in the Minnick case is not material here.

15. It may be well, however, to refer to a fault common both to the instruction in the Minnick case and the one given by the court in this case, which should be avoided by trial courts when instructing juries, particularly in cases where more than one conclusion may be drawn from the evidence. The instruction in each contains the phrase, "his failure to make such explanation may be considered by you as a circumstance *tending to show defendant's guilt.*"

In the case of *State* v. *Maloney,* 27 Or. 53 (39 Pac. 398), the court, in reversing the case, held that it was error for the court to instruct the jury that the evidence, or any particular item thereof, tended to show the guilt of the defendant. Instructions to the effect that the evidence tended to show the guilt of a defendant, or any other fact in issue in a case, have been criticised by this court in numerous decisions: *State* v. *Sally,* 41 Or. 366, 370 (70 Pac. 396); *State* v. *Osborne,* 54 Or. 289, 303 (103 Pac. 62, 20 Ann. Cas. 627); *State* v. *Rader,* 62 Or. 37, 40 (124 Pac. 195); *Saratoga Inv. Co.* v. *Kern,* 76 Or. 243, 249 (148 Pac. 1125); *De War* v. *First National Bank of Roseburg,* 88 Or. 541, 547 (171 Pac. 1106). Finally, in the case of *State* v. *McLennan,* 82 Or. 621 (162 Pac. 838), it was pointed out that the testimony in that case was susceptible to

several conclusions besides that of the guilt of the defendant, and it was declared to be reversible error for the trial court in such a case to direct the jury that the testimony "tends to prove" or points in a certain direction when any other conclusion may be drawn from it with equal propriety. The court, speaking through Mr. Chief Justice BURNETT, said:

"It is only where the testimony points to a definite conclusion and to no other that the court is authorized to say to the jury that it 'tends' to prove anything. If the conclusion to be drawn from the circumstance in question is equivocal, it is for the jury alone to say what influence and what direction shall be accorded to the evidence on the point. What is here written on this point is not in conflict with *State* v. *Brown,* 28 Or. 147, 163 (41 Pac. 1042), *Coos Bay R. R. Co.* v. *Siglin,* 34 Or. 80, 84 (53 Pac. 504), and *Smitson* v. *Southern Pacific Co.,* 37 Or. 74, 104 (60 Pac. 907), where it was decided, in substance, that under proper circumstances the court may say to the jury that there is testimony 'tending to prove' certain things. In those cases the evidence, if believed, had no double or treble significance as the testimony under consideration here."

16. Counsel for the state request the court to state whether or not upon a new trial any instruction should be given on the subject of the possession by defendant of the automobile charged to have been stolen, and if one should be given, exactly what it should contain.

The matters of law that should be stated to a jury depend not only upon the evidence adduced at the trial, but upon the manner in which the trial is conducted and also upon the requests for instructions that may be presented by the respective parties; therefore whether a particular instruction, or an instruction upon a particular matter, should be given in the

case, cannot be accurately determined in advance of the trial and before the evidence has been submitted.

In this connection, the attention of counsel is directed to the following excerpt from the opinion:

"The jury were authorized to consider those facts [the facts surrounding defendant's possession, including his explanations in respect thereto] together with all other facts in evidence in determining whether defendant conspired with Dooley to steal the car, or aided and abetted him in so doing, provided of course they were first satisfied from the evidence, beyond a reasonable doubt, that Dooley did steal the car, as charged."

The petition for rehearing is denied.

REHEARING DENIED.

---

· Objections overruled February 7, 1922.

ON OBJECTIONS TO COST BILL.

(204 Pac. 164.)

OBJECTIONS OVERRULED.

In Banc.

PER CURIAM.—This is a criminal action. Defendant was indicted, tried and convicted in Union County. Defendant appealed to this court and upon such appeal, the judgment of conviction against him was reversed; whereupon defendant filed a cost bill in which he claims costs and disbursements amounting to $140.95.

The state, through the district attorney of Union County, objects to defendant's claim for costs and disbursements upon the grounds that the statute does not make the state liable for defendant's costs, and that a judgment for costs cannot be given against the county, because it is not a party to the action.

Objection is also made that the items in defendant's cost bill for printing the abstracts and briefs are in excess of the amount allowed for that purpose under the rules of this court.

17. Defendant cannot recover the costs and disbursements incurred by him in the prosecution of his appeal, unless the right thereto is given by Chapter 88, Session Laws of 1921. That statute provides:

"In all criminal actions the county shall be liable for costs on appeal to the Supreme Court and with like effect as in the case of natural persons, upon reversal of the judgment of the lower court; and such costs shall be paid in the first instance by the county from which the appeal is taken."

The foregoing enactment is awkwardly phrased and its provisions are not as definite as they should be in view of the subject matter; but it is the duty of the court to give effect to the statute notwithstanding its imperfections, if it is reasonably possible to do so.

A statute imposing liability for costs upon the state or a county in cases where the state or a county is a party was in force at the time of the adoption of the foregoing enactment, which statute contained the following provisions:

"In all actions or suits prosecuted or defended in the name and for the use of the state, or any county or other public corporation therein, the state or public corporation shall be liable for and may recover costs in like manner and with like effect as in the case of natural persons. When a natural person is joined with the state as plaintiff, or the action is upon the information of such natural person, he shall be liable in the first instance for the defendant's costs": Sec. 577, Or. L.

18. This court, in the case of *Eisen* v. *Multnomah County,* 31 Or. 134 (49 Pac. 730), held that Section

103 Or.—13

577, Or. L., applied to civil suits and actions, and did not empower the court to award costs in a criminal action to a defendant who was acquitted on a trial in the Circuit Court; that in Oregon there was no statute entitling a defendant in a criminal action to recover costs incurred by him, and that without such a statute expressly conferring the power, a court could not award costs to a defendant in a criminal action.

The decision in the Eisen case was followed in the later case of *State* v. *Amsden,* 86 Or. 55, 61 (166 Pac. 942, 167 Pac. 1014), and therein the right of a defendant in a criminal action to recover his costs upon appeal was denied.

There was also in force at the time of the adoption of Chapter 88, Session Laws of 1921, a statute authorizing the court to tax against a defendant, in case of a conviction, the costs incurred by the prosecution, which statute reads as follows:

"The costs and disbursements in a criminal action or proceeding are paid to the person rendering the service by the proper county; but in case of a judgment of conviction, such costs and disbursements must be taxed against the defendant." Sec. 3681, Or. L.

It is manifest that Chapter 88, Session Laws of 1921, was designed to supplement Sections 577 and 3681, Or. L., so as to allow a defendant in a criminal action, who on appeal succeeds in reversing the judgment of the lower court, to recover the costs incurred by him on such appeal, and to require the county from which the appeal is taken, to pay the same.

The act does not authorize judgment against the state for defendant's costs, so none can be given: *State* v. *Ganong,* 93 Or. 440, 454 (184 Pac. 233); *Leadbetter* v. *Price, post,* p. 222 (202 Pac. 216).

The county is not a party to a criminal action upon appeal, and it is well settled that in the absence of statutory authority therefor, a judgment for costs and disbursements cannot be given against one not a party to an action: 7 R. C. L. 789; 15 C. J. 97.

The legislature, however, may require one not a party of record, but beneficially interested in or directly related to litigation, to pay the costs incurred by the prevailing party in such litigation. Section 579, Or. L., imposing the costs of an action upon the attorney for a nonresident plaintiff, is a statute of that character.

The state acts through and by the county in the enforcement of criminal statutes, and it is within the legislative power to require a county in which a criminal action arises, to pay the costs in such action on appeal, including those made by defendant: 15 C. J. 334–338.

In several states, the county from which an appeal is taken, though not a party to the action, is required by statute to pay the defendant's costs, or some items thereof, when the latter prevails upon such appeal. For instance, the statutory provision in Iowa is as follows:

"In case the judgment of the trial court is reversed or modified in favor of the defendant, on the appeal of defendant, he shall be entitled to recover the cost of printing abstract and briefs, not exceeding one dollar for each page thereof, to be paid by the county from which the appeal was taken."

In the case of *State* v. *Dorland,* 106 Iowa, 40 (75 N. W. 654), the Supreme Court of Iowa, construing the foregoing provision of the statute of that state, said:

"We come now to the second question. The statute says defendant 'shall be entitled to recover the cost

of printing abstracts and briefs.' It is manifest, we think, that he is to recover it upon a reversal or modification of the judgment; and the only way in which he can do this is to have them taxed as costs. When so taxed, they are to be paid by the county from which the appeal is taken. * * If not so paid, they may undoubtedly be recovered by suit.''

Chap. 88, Session Laws of 1921, expressly declares that the county from which an appeal is taken shall be liable for and pay costs upon appeal to the Supreme Court, and with like effect as in the case of natural persons, upon reversal of the judgment of the lower court; but like the Iowa statute, it does not expressly authorize a judgment for costs against the county and in favor of the defendant. The costs that a natural person is liable for upon reversal of the judgment of the lower court is the costs incurred by, or awarded by statute to, the prevailing party, and such costs are determined and taxed by this court.

19. Under the statute, the liability of a county for costs upon the reversal of an appeal in a criminal action is to be determined in the same manner—that is, by taxation thereof in this court, and when so taxed, the county from which the appeal is taken is liable for and required to pay the amount thereof. It is not necessary to determine whether the taxation of costs in such a case is a judgment in the strict legal sense. The word ''costs'' as used in the statute, when considered in connection with Chapter 322, Laws of 1921, includes the necessary disbursements upon appeal.

The district attorney represents the county, as well as the state, in every criminal action, and that officer can readily protect his county against unfounded or excessive claims for costs made in this court.

The claim of defendant for printing abstracts and briefs does not exceed the maximum rate allowed by the rules of this court. (See Rule 29, Rules of the Supreme Court, effective March 15, 1921.)

It follows that the objections to defendant's cost bill are overruled.   OBJECTION OVERRULED.