**In re STN ENTERPRISES, INC., d/b/a Atwater Arms, Debtor.**

**Robert BILBY, Plaintiff,**

v.

**STN ENTERPRISES, INC., d/b/a Atwater Arms, Defendant.**

**Bankruptcy No. 84–00098.**
**Adv. No. 85–0042.**

United States Bankruptcy Court, D. Vermont.

July 16, 1985.

Peter H. Banse, Rutland, Vt., for Robert Bilby, plaintiff.

John R. Canney, III, Rutland, Vt., for debtor, Defendant.

Jerome I. Meyers, Norwich, Vt., for Creditors' Committee.

## MEMORANDUM OPINION

CHARLES J. MARRO, Bankruptcy Judge.

The Court has before it for determination the right of Robert Bilby, Plaintiff, to reclaim possession of the following firearms:

1. Colt Model 1849 Pocket Pistol, with Charter Oak grip; cased in rare factory book casing, with presentation inscription. Pictured in THE BOOK OF COLT FIREARMS, SAMUEL COLT PRESENTS, AND THE COLT HERITAGE. Unique set No. 198066. Excellent condition.
2. Historic Civil War presentation set of Col. Colt to General Irvin McDowell, and so inscribed; double presentation cased pair of Model 1860 Army Nos. 11706 and 11707; and cased set of Model 1861 Navy No. 1810 and Model 1862 Police No. 6495. Pictured in Samuel Colt Presents, Cold Engraving, etc., and well documented.

Bilby as Plaintiff filed his Complaint to reclaim these firearms on April 5, 1985, and his claim is resisted by both the Debtor and the Committee of Unsecured Creditors.

FACTS

The Debtor, STN Enterprises, Inc., was organized as a corporation on August 6, 1982 for the purpose of engaging in the purchase and sale of collectible firearms and related collectibles under the trade name of "Atwater Arms." Stephen T. Noyes was its president, sole stockholder and the driving force behind the corporate business. The corporation also conducted an investment program which included the purchase of certain collections of antique firearms. Noyes died on May 5, 1984 as a result of injuries received in an automobile accident, and for several weeks prior thereto, the Debtor was having financial difficulties. These apparently precipitated the filing of a Petition for Relief on May 29, 1984 under Chapter 11 of the Bankruptcy Code. The Schedules show total liabilities of $12,989,844.35 and assets of $5,284,415.05. Included in the assets are Bennington Firearms inventory and Greenwich Firearms inventory, listed at an estimated market value without forced sale of $2,500,000.00 and $1,500,000.00, respectively.

Bilby is the owner of a manufacturing company in Lansing, Michigan, and he first became interested in investing in antique firearms in 1982, and from that time until April, 1984 he had made from 15 to 20 investments in firearms with the Debtor, STN Enterprises, Inc. His transactions were negotiated with Stephen T. Noyes, the president and sole stockholder of STN Enterprises, Inc., d/b/a/ Atwater Arms. Before investing in the Colt Model 1849 Pocket Pistol and the Historic Civil War presentation set of Col. Colt to General Irvin McDowell, Bilby had received a return of from 15% to 20% on his previous investments with STN Enterprises, Inc.

On March 14, 1984 he purchased from Atwater Arms a Colt Model 1849 Pocket Pistol for the sum of $37,500.00 for which he made payment by his check number 439 dated March 14, 1984, and payable to Atwater Arms. This purchase was evidenced by a receipt dated March 22, 1984 reciting the following:

"For the purchase of:
Colt Model 1849 Pocket pistol, with Charter Oak grips; cased in rare factory book casing, with presentation inscription. Pictured in THE BOOK OF COLT FIRE ARMS, SAMUEL COLT PRESENTS, AND THE COLT HERITAGE. Unique set. No. 198066. Excellent condition."

On or about March 22, 1984 he purchased the Historic Civil War presentation set of Col. Colt to General Irvin McDowell for the sum of $100,000.00 for which he paid by his check number 445 dated 3/28/84 payable to S.T. Noyes. This check bore the notation "Spider—70" which was a code for the description of these firearms. In connection with this purchase he received from Atwater Arms a bailment agreement dated March 22, 1984 executed by him as purchaser/owner and by Stephen T. Noyes in behalf of Atwater Arms, and reading as follows:

"Having purchased the firearm(s) listed below from Atwater Arms and realizing that improper or excessive handling can effect condition and thereby greatly reduce the value of my purchase, I wish to create a bailment, leaving my purchase in the care and custody of Atwater Arms. It is my understanding that At-

water Arms will store this purchase either in its secured showroom in Bennington or in "The Vault" in Greenwich, Connecticut. It is also understood that Atwater Arms has sufficient insurance on both locations and coverage while in transit. I agree to pay, on an annual basis, a reasonable fee for insurance and storage while my purchase is in Atwater Arms' care and custody.

*"Historic Civil War presentation set from Col. Colt to General Irvin McDowell, and so inscribed; double presentation composed of cased pair of Model 1860 Armys, nos. 11706 and 11707; and cased set of Model 1861 Navy no. 1810 and Model 1862 Police no. 6495. Pictured in SAMUEL COLT PRESENTS, COLT ENGRAVING, etc., and well documented."*

Bilby never saw the Colt Model 1849 Pocket Pistol which he purchased for $37,-500.00 or the McDowell set firearms which he purchased for $100,000.00 and which were part of the San Antonio Collection. As far as he knew, Atwater Arms might not have had these weapons in its possession.

Joseph A. Conte, Vice Chairman of the Committee of Unsecured Creditors, participated in a number of investments with Atwater Arms through Noyes. He also represented other investors and in early February, 1984, he with a larger group of investors put up the money to purchase the San Antonio Collection which included the McDowell set. He arranged for the transportation of the San Antonio Collection from W.O. Ranch in Texas to his vault in Greenwich, Connecticut where the San Antonio Collection was stored as security for the loan made by the group of investors to Atwater Arms for purchase of this collection.

Conte provided for security by way of armed guards for the transfer of the San Antonio Collection from Kennedy International Airport in New York to his vault in Greenwich, Connecticut. The McDowell set remained in Conte's vault as security for the loan made by the investors to Atwa-

ter Arms from February, 1984 until at least April 30, 1984, and the only parties who had access to this vault were Conte and his wife. The guns which comprised the McDowell set purchased by Bilby for the sum of $100,000.00 remained in the sole and exclusive possession of Conte and they were in such possession on March 22, 1984; March 28, 1984; and March 30, 1984.

99% of the transactions between Bilby and Atwater Arms were conducted verbally with payoffs being made through the mail by checks representing his investments plus profits. Bilby was not a collector and his only interest was a monetary gain.

The fair market value of the McDowell set purchased by Bilby for $100,000.00 is $104,000.00 and the fair market value of the Colt Pocket Pistol purchased by Bilby for $37,500.00 is $27,500.00.

STN Enterprises, Inc., conducted its business in the Town of Bennington, Vermont, and no financing statements were filed either in the Office of the Town Clerk of Bennington, Vermont, or in the Office of the Secretary of State, Montpelier, Vermont.

## DISCUSSION

Bilby lays claim to the firearms described in his Complaint by virtue of two alleged bailment agreements: a verbal one as to the Colt Model 1849 Pocket Pistol and the written bailment agreement of March 22, 1984 as to the McDowell set. His position is not tenable.

■ Bilby has the burden of proving all elements of his cause of action including the existence of valid and effective bailment agreements. 8 C.J.S. 513 § 50; 8 Am.Jur.2d 1057–8 § 322. As to the claimed verbal agreement relating to the 1849 Pocket Pistol the Court deems it most unusual that there was in fact a bailment without any documentation, especially since the parties executed a written bailment agreement as to the McDowell set. Further, Bilby himself testified that he had engaged in 15 to 20 previous transactions with Atwater Arms for investment pur-

poses, receiving a 10% to 15% profit; that he never saw any of the firearms that he purchased from Atwater Arms and did not know whether in fact Atwater Arms had possession of such weapons; that 99% of his transactions were conducted verbally and the payoffs were made by Atwater Arms through the mails with checks covering investment and profit; that he was not a collector of firearms and that his only interest was monetary gain. Under such circumstances the Court is not convinced that there actually was a bailment agreement between Bilby and Atwater Arms as to the 1849 Pocket Pistol.

Even though there was a written bailment agreement as to the McDowell set which was received by Bilby from Stephen Noyes of Atwater Arms, the undisputed testimony of Joseph Conte which the Court considers credible was that he held possession of the McDowell set as part of the San Antonio Collection from February, 1984 until at least April 30, 1984 at his vault in Greenwich, Connecticut as security for a loan made by him and investors he represented for the purchase of the San Antonio Collection. Therefore, it is clear that on the date of the written bailment agreement executed by Bilby and Atwater Arms; i.e., March 22, 1984, as well as on March 28, 1984 and March 30, 1984, Atwater Arms did not have possession of the McDowell set and, therefore, there could not be an effective bailment agreement between the parties.

A "bailment," in its ordinary legal signification, imports the delivery of personal property by one person to another in trust for a specific purpose, with a contract, express or implied, that the trust shall be faithfully executed, and the property returned or duly accounted for when the special purpose is accomplished, or kept until the bailor reclaims it. 8 Am.Jur.2d 738 § 2. *Zweeres v. Thibault*, 112 Vt. 264, 23 A.2d 529.

Accordingly, there must be a delivery of the property if a bailment is to result. See 8 C.J.S. 360 § 15 where the necessity of delivery is expressed as follows:

"An actual or constructive delivery of the property to the bailee is required for a bailment, except a constructive bailment, that is the property must be taken into the bailee's possession."

The Court recognizes, as pointed out by Bilby, that there may be a constructive bailment without an actual or constructive delivery. 8 C.J.S. 360 § 15. But this does not eliminate the necessity of possession for a constructive bailment. Such a bailment arises only when the person *having possession* of a chattel holds it under circumstances that the law imposes upon him the obligation of delivering it to another. 8 C.J.S. 360 § 15 citing *Hope v. Costello*, 220 Mo.App. 187, 297 S.W. 100. Underscoring supplied. See also 8 Am.Jur.2d 750 § 19 defining a constructive bailment thus:

"A constructive bailment, as distinguished from constructive delivery, arises when the person having possession of a chattel holds it under such circumstances that the law imposes on him the obligation to deliver it to another." Underscoring supplied.

In discussing the relative importance of delivery in an actual or constructive bailment the Court in *Wentworth v. Riggs*, 159 App.Div. 599, 143 N.Y.S. 955, said at page, 143 N.Y.S. at 956:

"The essential fact of legal significance in all these cases is possession. It certainly is not delivery, for in none of these cases of constructive bailment is there either an actual or a constructive delivery." Underscoring supplied.

"Bailment ... begins when the possession of personal property is transferred to the bailee." *Outcault Advertising Co. v. Brooks*, 82 Or. 434, 158 P. 517, 518, affirmed, 82 Or. 434, 161 P. 961.

At all pertinent times when a bailment could have been created Atwater Arms did not have possession of the McDowell set which from February, 1984 to April 30, 1984 was in the exclusive possession of Conte as security for a loan. Under such circumstances there was no bailment, and

at the time of execution of the bailment agreement on March 22, 1984 Bilby could have been very well purchasing a pig in the poke with the McDowell set already pledged as security for the Conte, et als., loan.

*Pettes v. Marsh* 15 Vt. 454 and *Brown v. Gleed* and others 33 Vt. 147 cited by Bilby are not apposite as they involve attachments rather than bailments and the parties consented to a receipt for the property rather than actual possession. In the instant case there could be no such consent since Bilby admitted that he did not know whether Atwater Arms ever had possession of the firearms he purchased.

■■■ The evidence clearly establishes that Bilby was an investor rather than a bailor in all of his transactions with Atwater Arms under an arrangement whereby Bilby turned over certain sums of money for the purchase of firearms to be resold by Atwater Arms for Bilby at a profit. Under the Uniform Commercial Code as adopted in this state, where goods are delivered to a person for sale and such person maintains a place of business at which he deals in goods of the kind involved, under a name other than the name of the person making delivery, the goods are deemed to be a sale and return and they are subject to the claims of the buyer's creditors while they are in the latter's possession. 9A VSA § 2–326(3). However, this subsection is not applicable if the person making delivery

(a) complies with an applicable law providing for a consignor's interest or the like to be evidenced by a sign, or

(b) establishes that the person conducting the business is generally known by his creditors to be substantially engaged in selling the goods of others, or

(c) complies with the filing provisions of the article on Secured Transactions (article 9).

Since Bilby knew that the Debtor was conducting business under its own name before he can reclaim the firearms he must establish that his ownership was evidenced by a sign or that the Debtor was conduct-

ing his business in a manner generally known by his creditors to be substantially engaged in selling goods of others or that he complied with the filing requirements relating to the financing statements. At the hearing he introduced no evidence tending to establish any of the foregoing alternatives and, therefore, he has not sustained the burden required of him.

The case law also supports the Debtor. See *Manufacturers Acceptance Corporation v. Pennington Sales, Inc.,* (1971), 5 Wash.App. 501, 487 P.2d 1053; *In Re International Mobile Homes of Johnson City, Inc.* (Bankr.E.D.Tenn.) 1 B.C.D. 131, 134; *In Re Maurice Lipsky Music Co., Inc.,* (Bankr.S.D.N.Y.1976) 2 B.C.D. 371; *In Re Wicaco Machine Co., Inc.* (Bankr.E.D.Pa.1984) 37 B.R. 463.

As a hypothetical lien creditor as of the date of the filing of the Petition for Relief, the Debtor's rights are superior to those of Bilby in the firearms purchased by him. § 544 and § 1107 of the Bankruptcy Code.

The Complaint of Bilby should be dismissed and his claim allowed as unsecured.

The Clerk shall enter Judgment consistent with this Memorandum Opinion.